413 S.E.2d 670

**ART'S FLOWER SHOP, INC.,
a Corporation, Plaintiff
Below, Appellant,**

v.

**The CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF WEST VIRGINIA, INC., a Corporation, and the Reuben H. Donnelley Corporation, a Corporation, Defendants Below, Appellees.**

No. 20085.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 25, 1991.

Decided Dec. 5, 1991.

Rehearing Denied Feb. 13, 1992.

Nisar A. Kalwar, Dunbar, for appellant.

Trina L. Leone, David B. Thomas, Spilman, Thomas, Battle & Klostermeyer, Charleston, for appellees.

BROTHERTON, Justice:

This case involves an appeal by Art's Flower Shop from the March 14, 1989, order of the Circuit Court of Kanawha County which partially granted the post-trial motion of the defendants, the Chesapeake & Potomac Telephone Company and the Reuben H. Donnelley Corporation, for judgment notwithstanding the verdict. The court set aside a jury verdict granting Art's Flower Shop $50,245 in damages and ordered that a new trial be set.

Art's Flower Shop is a closely held corporation which owns and operates a flower and gift shop in Dunbar, West Virginia. Art's has advertised in the Yellow Pages since 1963, when the business was opened. On February 2, 1981, the plaintiff signed a new contract under which C & P Telephone Co. (C & P), upon the payment of a fee, promised to publish the plaintiff's advertisement in the annual issue of the Yellow Pages of the 1981 Nitro–St. Albans area telephone directory. The Reuben H. Donnelley Company (Donnelley) solicited and sold advertising space on behalf of C & P during the time in question. However, the 1981 directory did not contain the contracted-for advertisement. The plaintiff argues that he suffered immediate set-backs and showed a steep decline in business following the omission.

Thereafter, the plaintiff filed this action in the Circuit Court of Kanawha County alleging a breach of contract and that the contracted Yellow Pages advertisement was intentionally and deliberately left out of the telephone directory by Donnelley.[1]

The plaintiff sought compensatory and punitive damages in the amount of $250,000 each. The defendants denied that the advertisement was deliberately omitted, stating that the omission was inadvertent, and also denied that the omission constituted a breach of their contractual duties.

As an affirmative defense, C & P and Donnelley asserted that their liability, if any, was limited to the amount equal to twice the cost of the advertisement, by virtue of the contract signed on February 12, 1973, and a second contract with the same liability terms signed in 1978. C & P also argues that the plaintiff is barred from collecting punitive damages since it did not ratify or affirm the conduct of its alleged agent.

At trial, two contracts were brought to the court's notice. The 1978 contract, which limited any liability to twice the amount of the cost of the advertisement, and a 1981 contract, which stated that "all other terms and conditions remain as previously signed." The Kanawha County Circuit Court ruled that the 1981 contract was a renewal of the prior contract signed in 1978, and the parties were bound by the terms and conditions contained in the 1978 contract.[2] After reviewing both contracts, the circuit court found that:

> I think that the (1981 contract) by the language on its face, it is referring to prior writings and documents, because if you excluded all prior agreements and you tried to say this is just a contract in and of itself, I don't think that it gets there. Number one, it doesn't look like a contract, and it does not even say it is a contract, and it just refers to too many prior things, about change copy and no

---

1. The Donnelley salesman in charge of Art's Flower Shop's ad maintained a personal account for the purpose of purchasing flowers at Art's Flower Shop. An Art's Flower Shop employee called the salesman at home, as it does with all customers, to notify him of his delinquent account. Apparently his wife answered the phone and, when informed of the delinquency, expressed surprise and lack of knowledge of the existence of the account. Soon after, the salesman called the flower shop and "literally cursed" the employee for attempts to contact him at home. He concluded his conversation by stating he was "going to take care of Art's Flowers." At trial, evidence was developed that, although the 1981 Yellow Pages ad contract was handled by a new representative, the account remained in the name of the original salesman. The plaintiff thus argues that the contract was either destroyed or deliberately canceled in retaliation.

2. The actual charge for the advertisement was $918.60.

change copy. And, so, I think a fair characterization of it, it is a renewal of a prior contract.

Thus, the circuit court read the 1978 contract in conjunction with the 1981 contract.

At the close of the plaintiff's evidence, the circuit court entered a directed verdict for the defendants. The circuit court noted that since there were no intervening contracts between 1978 and 1981, the 1981 contract contained the same terms limiting liability that were spelled out in the 1978 contract. The court also ruled that the evidence was insufficient to present the case to the jury for an award of punitive damages. The case was then submitted to the jury on the issue of compensatory damages, and the jury returned a verdict in the amount of $50,245. However, the defendant then moved for a judgment notwithstanding the verdict. The court granted the motion and ordered that a new trial be held because the compensatory damages should have been limited to twice the cost of advertisement, as stated in the 1978 contract.

■ The plaintiff below, now appellant, argues that first, it was error for the court to consider the 1978 contract to be part and parcel of the 1981 advertising contract. The appellant also maintains that even if the 1981 contract is read to contain, by reference to the 1978 contract, the limitation of liability clause, the contract was unconscionable and unenforceable as a matter of public policy.

The 1978 contract, including the liability clause, provides, in pertinent part:

[t]he undersigned applies for advertising as described herein, for a minimum of one issue, commencing with the 1978 issue, and for subsequent issues until terminated by either party as set forth below, and agrees to pay The Chesapeake and Potomac Telephone Company of West Virginia therefor at the rate of $62.70 Per Month, in advance and to be Bound by the Terms and Conditions Stated On the reverse side of this form.

\* \* \* \* \* \*

In the event of any error in or omission of the advertising for which application is hereby made, the Telephone Company will not be held liable for an amount exceeding the amount of the charge for the advertising in error or omitted.

The 1981 contract in question states as follows:

TO THE C & P TELEPHONE COMPANY OF W.VA.:

THIS IS YOUR AUTHORITY TO INSERT IN THE NEXT DIRECTORY (INDICATED ABOVE) THE SAME ITEMS OF ADVERTISING NOW APPEARING IN THE CURRENT ISSUE OF THAT DIRECTORY.

*THESE ITEMS WILL BE BILLED AT THE NEW INCREASED RATES ESTABLISHED FOR THE NEXT ISSUE OF THAT DIRECTORY.* THE TOTAL INCREASE IN MONTHLY BILLING FOR THE NEXT ISSUE IS SHOWN ABOVE IN COMPARISON TO THE CURRENT MONTHLY BILLING.

ALL OTHER TERMS AND CONDITIONS WILL REMAIN AS PREVIOUSLY SIGNED. DISPLAY ITEMS WILL BE ASSIGNED THE SAME POSITION NUMBER OR BETTER IN ANY DIRECTORY WHERE SPACE PRECEDENCE IS APPLICABLE.

The appellant argues that the 1981 contract was a separate contract, independent of the 1978 contract, pointing to the consideration listed, the duration of the contract, the purpose of the contract, disclaimers, and the representations made. The appellant contends that not only was he not bound by contract clauses which incorporate other provisions by reference, but that while signing the 1981 contract, he was not reasonably informed by the defendants about the terms and conditions contained on the reverse side of the 1978 contract.

■ We must disagree. Nothing in West Virginia statutes or case law precludes incorporation of prior contract provisions by reference to an earlier contract. In *First National Bank of Gallipolis v. Marietta Manufacturing Co.,* 151 W.Va. 636, 153 S.E.2d 172 (1967), we defined a contract as an offer and an acceptance

supported by consideration. *Id.* at syl. pt. 2. In *Ashland Oil, Inc. v. Donahue,* 159 W.Va. 463, 223 S.E.2d 433 (1976), this Court held that "[i]t is a well-recognized principle of law that, even though writings may be separate, they will be construed together and considered to constitute one transaction when the parties are the same, the subject matter is the same, and the relationship between the documents is clearly apparent." *Id.* 159 W.Va. at 469, 223 S.E.2d at 437. All three requirements identified in *Ashland* exist in this case, and thus, the two contracts will be construed together.

Next, the appellant argues that there was an imbalance in the economic and bargaining strength of the parties.[3] The issue of unconscionability was examined in *Board of Education of Berkeley County v. W. Harley Miller,* 160 W.Va. 473, 236 S.E.2d 439 (1977), which involved an action to enforce an arbitration award based upon an allegedly adhesive arbitration provision. In holding the arbitration provision enforceable, the Court in *Miller* discussed

> ... the traditional contract of adhesion situation in which one party to a contract may be confronted by another party which holds either a monopolistic or oligopolistic position in some particular line of commerce. While this exception would appear to address the most likely avenue for abuse in the law of arbitration, there are two more which should be specifically mentioned. Whenever a party can bring an arbitration clause within the unconscionability provisions of § 2–302 of the Uniform Commercial Code, *W.Va.Code,* 46–2–302 [1963], then that, too, would indicate that there was no meaningful bargaining with regard to the arbitration provision and should invalidate it. Furthermore, when arbitration is wholly inappropriate, given the nature of the contract, and could only

have been intended to defeat just claims, the provision cannot be considered to have been bargained for.

*Id.* 160 W.Va. at 486, 236 S.E.2d at 447. Thus, the court concluded that:

> ... where a party alleges that the arbitration provision was unconscionable or was thrust upon him because he was unwary and taken advantage of, or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract.

*Id.* at syl. pt. 3, in part.

More recently, in syllabus point 3 of *Troy Mining Corp. v. Itmann Coal Co.,* 176 W.Va. 599, 346 S.E.2d 749 (1986), this Court stated: "[a]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." The determination of unconscionability is a question for the court, not the jury. *Id.* at syl. pt. 1.

We have also acknowledged that in many commercial transactions, some inequality of bargaining power exists. *Ashland Oil Co.,* 159 W.Va. at 473, 223 S.E.2d at 440. Since many of these situations may not revolve around an unconscionable contract despite that inequality, something more is required. In *Troy Mining Corp.,* we quoted the Restatement (Second) of Contracts to state:

> [G]ross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion or may show that the weaker party had no meaningful, no real alternative, ... to

---

**3.** West Virginia Code § 46–2–302(1) (1966) discusses unconscionability in contract clauses for goods:

> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made

the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

the unfair terms. Restatement (Second) of Contracts § 234 comment d at 111 (Tent. Draft No. 5, 1970). *Troy Mining Corp.,* 176 W.Va. at 604, 346 S.E.2d at 753. Our analysis, therefore, must focus on the relative positions of the parties, the nature of the entire contract, the adequacy of bargaining position, the meaningful alternatives available to the appellant, and the existence of unfair terms in the contract. *Id.* 176 W.Va. at 604, 346 S.E.2d at 753; *Miller,* 160 W.Va. at syl. pt. 3, 236 S.E.2d at syl. pt. 3.

■ The end result of this analysis is that the liability clause in the 1978 contract between C & P and Art's Flower Shop is void for unconscionability. The positions of C & P and Art's Flower Shop were grossly unequal: C & P had the only Yellow Pages directory in the area. As a monopoly, C & P had the right to make the Yellow Pages an integral part of their regular white pages directory and the name recognition to make it successful. *See Miller,* 160 W.Va. at 486, 236 S.E.2d at 447. No evidence was presented of a comparable, meaningful alternative to a Yellow Pages advertisement. In fact, Art's Flower Shop's efforts to mitigate its damages resulting from the omission by use of radio and television advertisements, stickers, personal letters, and the distribution of flyers, resulted in no significant increase in business. Since Art's Flower Shop had no meaningful alternative to purchasing the advertisement from C & P, it obviously was in no position to bargain for the contract.

The final element in the analysis is the determination of whether unfair contract terms exist. While the contract terms are valid in and of themselves, the limitation of out-of-pocket damages experienced as a result of C & P's omission of a contracted-for advertisement to twice the cost of the ad is unreasonably favorable to C & P. Under the terms of the liability clause in the contract, C & P's negligent omission could cost a client its livelihood, yet C & P would be liable for only minimal costs, no matter how damaging its omission. Such a result cannot stand. Contrary to C & P's assertions, radio and TV advertisements, flyers

and other methods of advertising Art's services are inadequate and costly compared to the Yellow Pages advertisements.

Moreover, it is patently unfair for C & P to tout their services as the ultimate in advertising efficiency, results, and costs, but claim little or no liability when faced with an omission of an advertisement from the Yellow Pages. At trial, the plaintiffs introduced a letter written by Art Buckalew in 1973 regarding his Yellow Pages service. Donnelley later distributed the letter as an advertisement to prospective subscribers, prefacing the letter with the statement "The Yellow Pages can't be beat—a businessman can't expect growth without them." The letter reads as follows:

\*   \*   \*   \*   \*   \*

The ad itself is a real eye-catcher. It's important to me to tell prospective customers all that I offer. We've had amazing response to the phrase "24–hour telephone service" that we show in the ad. I receive an average of 2 to 3 orders at night on the business lines at my home. We've also received a great deal of business from out-of-towners calling from the area hotels. These are customers who would not know of our business by reputation, but solely through the Yellow Pages. With 3 to 5 new customers coming from the Yellow Pages a day, and approximately 50 on holidays, I'm convinced that directory advertising is a very fine medium.

Sincerely,

Art Buckalew
Owner

We fail to comprehend how the appellees can so blithely argue that the limitation of liability clause is valid and equitable after publicly proclaiming that no businessman can expect growth without their services.

Other states have held similar liability clauses in Yellow Pages contracts to be unconscionable and unenforceable as contrary to public policy. In *Discount Fabric House v. Wisconsin Telephone Co.,* 117 Wis.2d 587, 345 N.W.2d 417 (1984), the

Wisconsin Supreme Court found that the telephone company's liability clause, which also limited liability to the cost of the omitted ad, was exculpatory and did not consider the resulting injuries caused by the omission. *Id.* 345 N.W.2d at 419. Thus, the Court held that the limitation of liability clause was unconscionable and unenforceable as an exculpatory clause against public policy. *Id.* 345 N.W.2d at 426. Similarly, in *Rozeboom v. Northwestern Bell Telephone Co.*, 358 N.W.2d 241 (S.D.1984), the South Dakota Supreme Court reversed a summary judgment which limited a contractor's recovery to less than $200 for an omission from the 1980 Yellow Pages. The court held that the limitation of liability clause in the contract between the parties was an unconscionable contract of adhesion and noted that there must be a reasonable basis for measuring the loss and damages must be proved to a reasonable certainty. *Id.* at 247.

 Like other businesses, C & P must be liable for the foreseeable results of its acts or omissions. Its liability, however, is limited by those damages which can be proved with reasonable certainty. The *Restatement (Second) of Contracts*, § 352 (1981) discusses the reasonable certainty rule in awarding damages: "[d]amages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." West Virginia adopted the reasonable certainty rule in syllabus point 5 of *State ex rel. Shatzer v. Freeport Coal Co.*, 144 W.Va. 178, 107 S.E.2d 503 (1959): "Loss of profits can not be based on estimates which amount to mere speculation and conjecture but must be proved with reasonable certainty." In syllabus point 3 of *Kentucky Fried Chicken of Morgantown v. Sellaro*, 158 W.Va. 708, 214 S.E.2d 823 (1975), we reiterated that "[c]ompensatory damages recoverable by an injured party incurred through the breach of a contractual obligation must be proved with reasonable certainty."

While we acknowledge that establishing "reasonable certainty" in a negligent omission of an advertisement may be difficult to prove, the alternative is an almost endless array of speculative damages. Moreover, unless it can be shown that the omission was both intentional and willful, then punitive damages are improper. In this case, Art's failed to prove that the omission was intentional; thus, no punitive damages were proper.

The appellant testified that the Yellow Pages advertisement was crucial to survival in a flower shop, and the jury awarded the appellant $50,245 in damages. Its evidence, however, lacked certainty, given the confusion during trial regarding the two contracts, the limitation of liability clause, and the qualification of its experts. Accordingly, the order of the Circuit Court of Kanawha County granting a new trial is affirmed, but for the reasons stated above, and this case is remanded to the Circuit Court of Kanawha County for a new trial consistent with this opinion.

Affirmed in part, reversed in part, and remanded.