## CIRCUIT COURT OF THE CITY OF RICHMOND

Mansfield Jones

v.

Abraham J. Dere, etc.,
and Cantor and Cantor,
a Virginia Partnership

August 16, 1995

Case No. LW-2612-4

BY JUDGE RANDALL G. JOHNSON

This case involves a claim of professional malpractice against a lawyer and his firm. It is presently before the court on the parties' cross motions for summary judgment.

Mansfield Jones, who is the plaintiff in the present suit, and Joseph W. Poindexter were partners in a business known as Louisa Solid Waste Service. In 1985, Jones and Poindexter entered into a "buy-sell" agreement, the purpose of which, according to specific language in the agreement, was to "provide the funds necessary to carry out [the] purchase of [a] deceased partner's interest by the surviving partner." To that end, the agreement recited that Jones and Poindexter were each insured by a life insurance policy in the amount of $250,000. The agreement then required each partner to pay the premiums as they became due on the policy covering his partner, and to give proof of such payments to his partner. In other words, Jones would pay the premiums on the policy covering Poindexter, and Poindexter would pay the premiums on the policy covering Jones. If any premium was not paid when due, the partner who was insured under that policy could pay the premium and demand reimbursement from the other. Jones was the beneficiary of the policy on Poindexter's life; Poindexter was the beneficiary of the policy on Jones' life. The agreement provided that "[u]pon the death of either partner, the

survivor shall purchase, and the estate of the deceased partner shall sell, the partnership interest then owned by the partner who is the first to die." The agreement further provided that the proceeds of any insurance mentioned in the agreement "shall be applied towards the purchase price of the deceased partner's interest in the partnership." While the agreement also set out a method for annually determining the value of the partnership, as well as the value of each partner's interest in the partnership, such determinations were never made. Consequently, under the terms of the agreement, the values of the partnership and of each partner's interest for purposes of the agreement remained as set therein: $500,000 for the partnership and $250,000 for each partner's share, the latter amount being the same as the amount of each insurer's policy described in the agreement. What is significant for purposes of this case is that in spite of the stated purpose of the agreement as described above, and in spite of the fact that five specific circumstances which would cause the agreement to be terminated were set out in the agreement (termination of the partnership; written agreement of the partners; bankruptcy, receivership, or dissolution of the partnership; bankruptcy or insolvency of either partner; and simultaneous death of the partners or their deaths within 30 days of each other), there was no provision which expressly stated what would happen if no insurance existed when the first partner died; that is, whether the surviving partner's obligation to purchase his deceased partner's share was contingent upon the existence of insurance.

In December, 1986, Poindexter died. The insurance mentioned in the buy-sell agreement, however, both on the life of Poindexter and on the life of Jones, had lapsed in the summer of 1986 due to nonpayment of premiums. When Poindexter's estate demanded that Jones purchase Poindexter's interest as required by the agreement, Jones refused, contending that the lapse of the insurance policies relieved him of his obligation to purchase Poindexter's interest. Poindexter's widow, who was also the administrator of his estate, then sued Jones in the Circuit Court of Louisa County. Jones hired as his lawyer Abraham J. Dere and Dere's firm, Cantor and Cantor, defendants in the present suit. (For purposes of this opinion, only Dere will be referred to as the defendant. Naturally, his firm's interests rise and fall with him.)

The suit against Jones was tried to a jury. At the conclusion of the evidence, the judge met with counsel in chambers to discuss jury instructions. No court reporter was present. The jury was then instructed, and after they had gone into the jury room to deliberate, the following collo-

quy occurred, with Mr. Purcell being counsel for the Poindexter estate, and Mr. Dere, the present defendant, being counsel for Jones:

> THE COURT: For the record I gave the following instructions as tendered by the Plaintiff. Number one (1), two (2), two D (2D) as in dog, two E (2E), three (3), four (4), five (5), five A (5A), five B (5B), six (6), seven (7), eight (8), eleven (11). I refused Plaintiff's eight A (8A) and eight B (8B). Plaintiff excepted to those refusals.

> I gave for the defendant his tendered instructions two A (2A), two B (2B), seven A (7A), nine (9) and ten (10). I refused tendered instructions eight C (8C) and eight D (8D) and the defendant excepted to those refusals. Do you wish to state your exceptions, Mr. Purcell?

> MR. PURCELL: Judge, I think I can reserve the right to do so at a later time, depending upon the verdict, if that is all right. I have a motion to make at that point which I assume defendant will as well.

> THE COURT: Do you wish to state yours?

> MR. DERE: I don't need to state them now.

> THE COURT: All right, we will wait the return of the jury.

Trial Transcript at 349-50.

The jury returned a verdict against Jones in the amount of $250,000. Dere made an oral motion to set aside the verdict, and the court set a briefing schedule and oral argument. Before oral argument, Jones terminated Dere and hired new counsel who, in addition to relying on the motion to set aside the verdict, also filed a motion for judgment n.o.v. As briefed and argued, the two motions were premised upon the theory that the sole purpose of the agreement was to provide funds necessary to enable a partner to buy out the interest of a deceased partner and that when the insurance lapsed, the purpose of the agreement was thwarted and the agreement became unenforceable. Further, the motions raised the contention that the agreement resulted in a payment far in excess of the value of the deceased partner's interest, that this made it a contract of life insurance, and that the parties had not been licensed as insurers by the State Corporation Commission. The court denied the motions and entered judgment on the verdict. Jones then appealed to the Supreme Court of Virginia.

On appeal, Jones raised the same questions as those contained in the motion to set aside the verdict and the motion for judgment n.o.v. He also

raised the question of unconscionability of the buy-sell agreement and the granting and refusal of various instructions. The Supreme Court affirmed the judgment. In so doing, it said:

> The grounds assigned in the motion for judgment n.o.v., and the issue of unconscionability, are entirely inconsistent with the theories upon which the case was submitted to the jury. The parties, having assented to the jury instructions, are bound by them. Jury instructions, given without objection, become the law of the case. *Bradner v. Mitchell*, 234 Va. 483, 491, 362 S.E.2d 718, 723 (1987). We will not entertain an appeal on grounds inconsistent with the theories embodied in such instructions. *See* Rule 5:25. The procedural posture of the case thus bars consideration of each of the assignments of error, and we will therefore affirm the judgment.

*Jones v. Poindexter, Adm.*, Record No. 880922, unpublished opinion dated September 22, 1989, at p. 5.

It is Jones' contention in the present action that Dere was negligent in failing to object to the trial court's granting of certain instructions offered by the Poindexter estate, and its refusal to give two instructions offered by Jones; in failing to properly preserve his objections to the trial court's ruling on the issue of unconscionability; and in failing to call certain witnesses on behalf of Jones at trial. The court will consider each of these issues in turn.

Although plaintiff's motion for judgment contains other allegations of negligence against Dere, those allegations were not argued in Jones' memoranda or at oral argument. The court deems such allegations to be abandoned.

## I. *Instructions*

Instruction Number 7, which was offered by the Poindexter estate and which was given by the trial court, told the jury that the lapse of insurance on the lives of Jones and Poindexter did not automatically terminate the buy-sell agreement. Instruction 8D, which was offered by Dere on behalf of Jones but which was refused, would have told the jury that payment of the insurance premiums was a condition precedent to the effectiveness of the buy-sell agreement. What is obvious from these instructions, of course, is that if Jones' present argument is correct, the case should not have been given to the jury at all since it was uncontroverted in the underlying action

that the insurance policies had lapsed. If such lapse automatically terminated the policies, as Jones now argues and as Dere argued on his behalf at trial, then *no* instructions should have been given since Jones would have been entitled to judgment as a matter of law. The question, then, is whether the lapse of insurance did automatically terminate the buy-sell agreement. I hold that it did not.

As previously noted, the buy-sell agreement clearly stated that its purpose was to provide funds necessary to carry out the purchase of a deceased partner's share of the business by the surviving partner. As also previously noted, however, the agreement set out five specific circumstances under which the agreement would be terminated. The lapse of insurance was not one of them. Also significant, in the court's view, is the fact that the agreement did not limit the means of purchase of the deceased partner's interest to proceeds of insurance; that is, there was nothing in the buy-sell agreement to prevent the surviving partner from using funds other than insurance proceeds to purchase the deceased partner's share. Just as significant is the fact that while the buy-sell agreement provided a method for determining the value of the partnership on a yearly basis, the agreement contained no provision requiring or allowing the partners to vary the amounts of their insurance to match changes in the value of the business. In sum, this court finds that in spite of the "purpose" clause contained in the agreement, a fair reading of the agreement in its entirety makes it abundantly clear that such purpose was only *one* purpose, and that an equally important purpose was to require a partner to purchase the interest of a partner who died. Thus, Instruction Number 7 and the other instructions offered by the Poindexter estate were properly given, and Instruction 8D was properly refused. That being the case, Dere was not negligent in failing to object to the court's rulings on those instructions. He is, therefore, entitled to summary judgment on this issue.

## II. *Unconscionability*

Jones also claims that Dere was negligent in not objecting to the trial court's refusal to give Jones' Instruction 8C which would have told the jury that if the $250,000 set out in the buy-sell agreement as the value of each partner's share had no reasonable relationship to the actual value of each share at the time of making the agreement, or if the damages sought by the Poindexter estate were so grossly disproportionate to the actual damages suffered, then the buy-sell agreement was unconscionable and the jury's verdict must be for Jones. The trial court, holding that the question

of unconscionability was one of law, and further holding that the buy-sell agreement was not unconscionable, refused the instruction. Again, I agree with the trial court.

The Supreme Court of Virginia has never ruled on whether the issue of unconscionability is one of law for the court or one of fact for the jury. The Supreme Court of Appeals of West Virginia, however, has. In *Art's Flower Shop v. C. & P. Telephone Co.*, 186 W. Va. 613, 413 S.E.2d 670 (1991), the West Virginia court said:

> "[A]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." The determination of unconscionability is a question for the court, not the jury.

413 S.E.2d at 674 (*quoting Tracy Mining Corp. v. Itmann Coal Co.*, 176 W. Va. 599, 346 S.E.2d 749, 750 (1986)).

While this court is obviously not bound by the above holding, I feel that it is a correct statement of law. Since the question of whether Jones would have prevailed on appeal is also a question of law for this court to decide in this case, I hold that the Supreme Court of Virginia would adopt the West Virginia law as expressed above. Accordingly, Dere was not negligent in not objecting to the trial court's refusal to give the proffered instruction.

While the above statement as to what the Supreme Court of Virginia would have done had Dere preserved has objection may seem a bit presumptuous, it is only what the law requires. This is so because in cases of legal malpractice in which a plaintiff claims that he or she would have prevailed on appeal but for a lawyer's negligence, it must be determined in the trial court what the appellate court would have done had the lawyer not been negligent. *See, e.g., Goldstein v. Kaestner*, 243 Va. 169, 172, 413 S.E.2d 347 (1992). Obviously, this is a question more appropriately addressed to the court than to a jury.

This court also believes that the trial court in the underlying case was correct that the buy-sell agreement was not unconscionable. As was said in *Smyth Brothers v. Beresford*, 128 Va. 137, 104 S.E. 371 (1920):

> While the jurisdiction undoubtedly exists in the courts to avoid a contract on the ground that it makes an unconscionable bargain, nevertheless an inequitable and unconscionable bargain has been defined to be "one that no man in his sense and not under a

delusion would make, on the one hand, and as no fair man would accept, on the other." The inequality must be so gross as to shock the conscience.

128 Va. at 137.

There was simply no evidence presented at the underlying trial which brought the buy-sell agreement within that definition. Since the trial court correctly held that it, not the jury, should decide the question of unconscionability, and since that court also correctly held that the buy-sell agreement was not unconscionable, Dere's failure to preserve his objection on that point did not constitute negligence.

### III. *Witnesses*

Jones' final claim of negligence against Dere is that Dere failed to call as witnesses several insurance agents who, according to their deposition testimony, would have testified that they, the agents, "learned from both Jones and Poindexter that they no longer wanted the expense of the policies and mutually decided to lapse the policies." Plaintiff's Supplemental Motion for Summary Judgment, at pp. 11-12. One of the agents would also have testified that he sent Poindexter and his wife an application for cheaper insurance in 1986. *Id.* The court holds that Dere's failure to call those persons as witnesses was not negligence.

This court can easily imagine cases in which a lawyer's failure to call a particular witness at trial would be malpractice, or would at least present a jury issue of malpractice. For example, where the only eyewitness to an automobile accident would testify in favor of one party, and such eyewitness is credible and available, it may be negligent for that party's lawyer not to call him or her. Similarly, the failure to call an expert witness in a professional malpractice claim may constitute negligence. In most cases, however, the decision to call or not to call particular persons as witnesses is a matter of trial counsel's judgment which is not subject to attack in a malpractice action. Indeed, while the court has found no Virginia case on point, it is well settled in other jurisdictions that an attorney cannot be held liable for the good-faith exercise of judgment on a client's behalf, even when that judgment is mistaken:

> [T]here can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment . . . . Otherwise, every losing litigant would be able to sue his attorney if he could find another

attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight.

*Woodruff v. Tomlin*, 616 F.2d 924, 930 (6th Cir. 1980). *See also, Celucci v. Bronstein*, 277 N.J. Super. 506, 522, 549 A.2d 1333, 1341 (1994); *Hudson v. Windholz*, 202 Ga. App. 882, 886, 416 S.E.2d 120, 124 (1992); *Goldstein v. Lustig*, 154 Ill. App. 3d 595, 600, 507 N.E.2d 164, 168-69 (1987); *Rorrer v. Cooke*, 313 N.C. 338, 358, 329 S.E.2d 355, 367-8 (1985); *Oda v. Highway Ins. Co.*, 44 Ill. App. 2d 235, 252-53, 194 N.E.2d 489, 498 (1963); and R. Mallen and J. Smith, *Legal Malpractice*, § 14.14 (2d ed. 1989).

In fact, this doctrine is so well established that the court in *Woodruff* noted that it could find no American decision holding an attorney liable for the choice of trial tactics or a good faith exercise of judgment. 616 F.2d at 930, n. 1. This court also can find none.

The court has reviewed the trial transcript of the underlying case and the deposition testimony of the persons Jones claims should have been called by Dere as witnesses. The deposition testimony falls far short of establishing what Jones claims it establishes. In fact, that testimony adds nothing to the testimony actually given at trial with regard to what Jones and Poindexter intended by allowing their insurance to lapse. At best, such testimony would have been cumulative. It would not have strengthened Jones' case. In any event, Dere's decision not to use it does not fall within the category of cases where such decision is negligence. Instead, it falls with those cases where such decision is a matter of trial strategy. It cannot be second guessed now.

### Conclusion

For all of the reasons stated above, the court will deny plaintiff's motion for summary judgment, grant defendants' motion for summary judgment, and enter judgment in favor of defendants.