Dawn BROWN, et al.

v.

TENNESSEE TITLE LOANS, INC.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Assigned on Briefs Sept. 18, 2006 Session.

Oct. 4, 2006.

Permission to Appeal Denied by Supreme Court Feb. 26, 2007.

and others similarly situated who have or had a Title Pledge Loan under T.C.A. § 45–15–111 with the Defendant and have made payments of interest and/or fees within the year preceding the filing of the complaint and thereafter.

J. Bartlett Quinn, Chattanooga, Tennessee, and Charles D. Lawson, Nashville, Tennessee, for the Appellee Tennessee Title Loans, Inc.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

This interlocutory appeal involves a potential class action lawsuit filed by four named plaintiffs against Tennessee Title Loans, Inc. ("Defendant"). The plaintiffs asserted various claims, including a violation of the Tennessee Title Pledge Act, Tenn.Code Ann. § 45–15–101, et seq., and the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–18–101, et seq. Defendant moved to stay these judicial proceedings and to compel arbitration, relying on identical arbitration clauses contained within the title pledge agreements signed by all four named plaintiffs. The plaintiffs resisted the motion to compel arbitration arguing, among other things, that the arbitration clauses were unconscionable because the clauses reserved only to Defendant the right to a judicial forum. The Trial Court determined that the arbitration clauses were not unconscionable and granted Defendant's motion to compel arbitration. We reverse.

### Background

The complaint in this case was filed by Dawn Brown, Anne Devries, Carly Hahn, and Greg Walton ("Plaintiffs"), individually, and on behalf of all other Tennessee residents similarly situated. The putative

James R. Kennamer, Chattanooga, Tennessee, for the Appellants, Dawn Brown, Anne Devries, Carly Hahn, Greg Walton,

class comprised all individuals who were customers and borrowers of Defendant within the past one year. In general terms, Plaintiffs claim Defendant charged interest in excess of the statutory maximum amount and/or charged a "redemption premium fee" in excess of that allowed by the Tennessee Title Pledge Act, Tenn. Code Ann. § 45–15–101, *et seq.* Plaintiffs brought claims pursuant to the Tennessee Title Pledge Act and the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–18–101, *et seq.* Plaintiffs sought compensatory and punitive damages.

Defendant filed a motion to stay the judicial proceedings and to compel arbitration. Defendant relied on arbitration clauses contained within each of the contracts signed by the named Plaintiffs. The arbitration clauses provide as follows:

> Arbitration Provision. Any and all disputes or disagreements between the parties arising out of this Agreement or any prior agreement between them (save and except the Lender's rights to enforce the Pledgor(s)' payment obligations, in the event of default, by judicial or other process) shall be decided by arbitration and in accordance with the procedural rules of the American Arbitration Association as presently published and existing. The parties agree to be bound by the decision of the arbitrator(s). The arbitration proceeding shall be a condition precedent to any other court proceeding and shall take place in Davidson County, Tennessee. Notwithstanding the applicability of any other law to any other provision of this Agreement, the Federal Arbitration Act ... shall control the construction, interpretation, and application of this paragraph. Any issue as to whether this Agreement is subject to arbitration shall be determined by the arbitrator.

Plaintiffs responded to the motion to compel arbitration claiming, among other things, that the arbitration clause was unconscionable because it reserved only to Defendant the right to a judicial forum in the event of default while limiting Plaintiffs solely to arbitration. Plaintiffs claimed that because the arbitration clause was unconscionable, it also was unenforceable pursuant to the Tennessee Supreme Court's majority opinion in *Taylor v. Butler*, 142 S.W.3d 277 (Tenn.2004).

The Trial Court entered an order granting Defendant's motion to compel arbitration after determining that the arbitration clause did not run afoul of *Taylor v. Butler*. Plaintiffs subsequently filed an application for permission to file an interlocutory appeal with the Trial Court. The Trial Court granted Plaintiffs' motion, stating, in part, as follows:

> The plaintiffs assert that the subject arbitration provision applicable in this case reserves the right of Tennessee Title to choose a judicial or arbitral forum and restricted the putative class members to only an arbitral forum. The plaintiffs contend that this Court's Order [upholding the validity of the arbitration clause] is in direct contravention of the precedent set by *Taylor v. Butler*, 142 S.W.3d 277 (Tenn.2004).
>
> Therefore, the Court has given consideration to the elements of Rule 9 of the Tennessee Rules of Appellate Procedure.... [After giving] consideration to these matters, it is the findings of this Court that
>
> 1. Forcing arbitration in this matter will be a deterrent to the Plaintiffs pursuing their claims and that review upon entry of final judgment is, and will be, ineffective;
>
> 2. Reversal would prevent the need for needless, extensive, and protracted arbitrations, as a reversal

would probably lead to class certification under Rule 23 of the *Tennessee Rules of Civil Procedure;* and

3. There is a need to develop a uniform body of law as to the enforceability of such arbitration provisions as well as a need to determine whether this Court's Memorandum Order conflicts with the ruling in *Taylor.*

We granted Plaintiffs' request for a Tenn. R.App. P. 9 interlocutory appeal on the "sole issue of whether the Trial Court's Memorandum Opinion of February 8, 2006 ... was in conflict with *Taylor v. Butler,* 142 S.W.3d 277 (Tenn.2004), and if so, was that error by the Trial Court." To these two questions contained in the sole issue before us, we answer "yes" and "yes."

### Discussion

The issue of whether an arbitration clause is unconscionable is a question of law. *See Taylor v. Butler,* 142 S.W.3d 277, 284–85 (Tenn.2004)(citing *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.,* 709 F.2d 427, 435 n. 12 (6th Cir.1983)). Our review of legal issues is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.,* 58 S.W.3d 706, 710 (Tenn.2001).

In *Taylor v. Butler,* 142 S.W.3d 277 (Tenn.2004), our Supreme Court discussed the validity of an arbitration clause contained in a contract titled "As Is Used Vehicle Retail Buyers Order." *Id.* at 280. As in this case now before us, the arbitration clause in *Taylor* provided that it was to be governed by the Federal Arbitration Act, 9 U.S.C. § 2. The arbitration clause in *Taylor* applied to "all claims, demands, disputes or controversies of every kind or nature between [the parties] arising from

the [sale of the vehicle]." *Id.* at 282. However, the arbitration clause further provided that the automobile dealer "may pursue recovery of the vehicle under the Tennessee Uniform Commercial Code and Collection of Debt due by state court action." *Id.* at 284. In deciding whether the arbitration clause at issue in that case was enforceable, the *Taylor* Court pointed out that under the Federal Arbitration Act ("FAA"), States are able to regulate the validity of arbitration agreements under general contract law principles. According to the Court:

> In determining whether there is a valid agreement to arbitrate, "courts generally ... should apply ordinary state-law principles that govern formation of contracts," *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). As the United State Supreme Court noted in *Allied–Bruce Terminix Cos. v. Dobson:*
>
> > Section 2 [of the FAA] gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.
>
> 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" the enforcement provisions of the FAA. *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

*Taylor v. Butler,* 142 S.W.3d at 284.

Having determined that state law contract principles such as fraud and uncon-

scionability or the like can be used to invalidate an arbitration clause governed by the FAA, the *Taylor* Court then proceeded to decide whether the arbitration clause at issue in that particular case was unenforceable in light of Tennessee contract law. The Court stated:

> While Tennessee has yet to address the issue of whether an arbitration provision in a consumer contract which reserves a right to access to the courts only for the merchant and not the consumer is voidable on the basis of unconscionability, a number of other jurisdictions have addressed such one-sided arbitration provisions.

For example, the Supreme Court of West Virginia held that:

> [W]here an arbitration agreement entered into as part of a consumer loan transaction contains a substantial waiver of the borrower's rights, including access to the courts, while preserving the lender's right to a judicial forum, the agreement is unconscionable and, therefore, void and unenforceable as a matter of law.

*Arnold v. United Cos. Lending Corp.*, 204 W.Va. 229, 511 S.E.2d 854, 862 (1998).

The Court in *Arnold* stated that "[a] determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" *Id.* at 861 (quoting *Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co.*, 186 W.Va. 613, 413 S.E.2d 670 (1991)). Applying this test, the Court noted that "the relative positions of the parties, a national corporate lender on one side and elderly, unsophisticated consumers on the other, were 'grossly unequal.'" *Id.* (footnote omitted). Additionally,

there was "no evidence that the loan broker made any other loan option available to the Arnolds." Finally, the Court found that "the terms of the agreement are 'unreasonably favorable' to United Lending." Based on these reasons, the Court found the arbitration agreement to be unconscionable.

Similarly, the Montana Supreme Court voided as unconscionable an arbitration provision contained in a contract for advertisement in a telephone directory that reserved the right to a judicial forum for the Publisher for collection of amounts due while limiting the consumer to arbitration of all claims. *Iwen v. U.S. West Direct*, 293 Mont. 512, 977 P.2d 989 (1999). The Montana Court held:

> [T]his case presents a clear example of an arbitration provision that lacks mutuality of obligation, is one-sided, and contains terms that are unreasonably favorable to the drafter. Because U.S. Direct presented this agreement on a take-it-or-leave-it basis, it is also a contract in which there was not meaningful choice on the part of the weaker bargaining party regarding acceptance of the provisions.... [D]isparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter, as they are in this case, that the agreement becomes unconscionable and oppressive.

*Id.* at 996; *see also Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998), *cert. denied*, 526 U.S. 1051, 119 S.Ct. 1357, 143 L.Ed.2d 518 (1999) (refusing to enforce an arbitration clause in a consumer loan contract which preserved for the finance company the judicial remedy of foreclosure on the debtor's mortgage but restricted the debtor's remedies solely to arbitration); *Lytle v.*

*CitiFinancial Servs., Inc.*, 810 A.2d 643 (Pa.Super.Ct.2002) (finding unenforceable an arbitration agreement that reserved access to the courts for CitiFinancial, absent "business realities" that would *compel* such a clause); *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000) (finding that the arbitration agreement lacked mutuality because it provided for a judicial forum for one party while restricting the other party to arbitration).[1]

The arbitration agreement in this case is comparable to those that were found to be unconscionable in the aforementioned cases. City Auto has a judicial forum for practically all claims that it could have against Taylor. Indeed, it is hard to imagine what other claims it would have against her other than one to recover the vehicle or collect a debt. At the same time, Taylor is required to arbitrate any claim that she might have against City Auto.

The contract signed between Taylor and City Auto is one of adhesion, in that it is a standardized contract form that was offered on essentially a "take it or leave it" basis without affording Taylor a realistic opportunity to bargain. *See* Black's Law Dictionary 40 (6th ed.1990). We have previously determined that enforceability of contracts of adhesion generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person,

or oppressive or unconscionable. *See Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn.1996). Courts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party. *Id.* Looking at the arbitration agreement in the present case, it is clear that it is unreasonably favorable to City Auto and oppressive to Taylor. For these reasons, we find the arbitration clause in the Buyers Order to be invalid and unenforceable.

*Taylor v. Butler*, 142 S.W.3d at 285–87 (footnote in the original).

When entering into the title pledge agreements, Plaintiffs in the present case essentially pledged the title to their vehicles in return for a loan. Upon payment of the amount of the loan, plus interest and the "redemption premium fee," Plaintiffs would regain title to their vehicles. For example, Plaintiff Dawn Brown borrowed $2,343.93 and pledged the title to her vehicle as security. Within thirty days, Brown could redeem her vehicle for the amount of the loan, i.e., $2,343.93, plus an additional $292.99, which represented interest and the "redemption premium fee."[2] Brown's only obligation under the agreement if she wanted to keep her vehicle was to pay the $2,636.92 within 30 days. According to the agreement, Brown was "pledging the above motor vehicle ... by delivering the Certificate of Title for the vehicle on the condition that it may be redeemed for a

---

1. A minority of courts reach the opposite conclusion, holding that agreements to arbitrate which reserve certain judicial remedies to one party are not unconscionable. *See e.g., Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir.2000) (upholding an arbitration agreement which exempted from arbitration disputes regarding buyer's failure to pay because buyer failed to show the agreement to be one of adhesion or sufficiently one-sided as to be unconscionable); *Conseco Fin. Serv. Corp. v. Wilder*, 47

S.W.3d 335 (Ky.Ct.App.2001) (holding that the arbitration agreement was not unconscionable even [though] it allowed the lender to pursue judicial enforcement of the security agreement). We find the majority view to be more persuasive.

2. The Title Pledge Agreement indicated that the percentage rate for the interest and fees, stated at a yearly rate, was "152.08%."

fixed price within a stated period of time." The agreement also stated that Brown could "redeem the vehicle upon paying the Total of Payments at any time within the respective period."

█ The arbitration agreements require Plaintiffs to arbitrate any and all claims they may have against Defendant. Defendant, however, is allowed to bypass arbitration altogether and proceed through the court system with regard to any claims against Plaintiffs "to enforce" Plaintiffs' "payment obligation, in the event of default".[3] In other words, Defendant can file a lawsuit and refuse to arbitrate any claim based on Plaintiffs' failure to do the one thing they agreed to do in the contract, i.e., pay a certain amount by a specified date.

In *Wisconsin Auto Title Loans, Inc. v. Jones,* 714 N.W.2d 155 (Wis.2006), the Wisconsin Supreme Court was confronted with an arbitration clause very similar to the arbitration clause in the present case. The Wisconsin Supreme Court concluded that the arbitration clause was unconscionable, stating:

The arbitration provision in the loan agreement broadly proclaims that any and all disputes, controversies, or claims between Wisconsin Auto Title Loans (or its employees or affiliates) and the borrower-whether pre-existing, present, or future-arising out of the loan agreement must be decided by binding arbitration. A parenthetical phrase "save[s] and except[s]" from binding arbitration Wisconsin Auto Title Loans' "right to enforce the borrower's payment obligations in the event of de-

fault, by judicial or other process, including self-help repossession."

Wisconsin Auto Title Loans justifies this "save and except" parenthetical as necessary to comply with Wis. Stat. §§ 425.203, 425.205, and 425.206, which limit non-judicial enforcement of actions to take possession of collateral. Wisconsin Auto Title Loans argues that these statutes protect consumers, not lenders. Thus, Wisconsin Auto Title Loans argues that the exception in the arbitration provision requiring that possession of collateral be taken in circuit court actually benefits the borrower. We are not convinced by this justification of the one-sided arbitration provision.

The "save and except" parenthetical in the arbitration provision exempting Wisconsin Auto Title Loans from binding arbitration extends further than allowing Wisconsin Auto Title Loans to bring a replevin action in circuit court. Not only may Wisconsin Auto Title Loans use a circuit court to replevy the loan collateral (the borrower's automobile), but the arbitration provision also allows Wisconsin Auto Title Loans to go to circuit court to enforce the borrower's payment obligations in the event of default.

Wisconsin Auto Title Loans has by the arbitration provision "saved and excepted" from binding arbitration all its disputes, controversies, and claims against the borrower. Wisconsin Auto Title Loans could, under the exception to the arbitration provision, use a circuit court to obtain a deficiency judgment. Wisconsin Auto Title Loans is also permitted by the exception to use any other procedure that a lender might pursue to

---

**3.** It is not clear what is meant by enforcing Plaintiffs' "payment obligation, in the event of default". This language certainly would include a lawsuit for monetary damages and likely also would include an action by Defen-

dant to gain possession of the vehicle upon default. In any event, the relevant language unquestionably encompasses at least one and most likely all of Defendant's primary avenues of available relief in the event of default.

satisfy the borrower's obligation under the loan agreement. In contrast, the arbitration provision relegates all the borrower's claims to arbitration. The borrower is required to submit all his disputes, controversies, and claims against Wisconsin Auto Title Loans to binding arbitration.

That Wisconsin Auto Title Loans has chosen to bring only a replevin action in the circuit court in the instant case is of no moment. The issue is the substantive unconscionability of the arbitration provision, which "saves and excepts" all claims of Wisconsin Auto Title Loans from arbitration.

The exception to the arbitration provision is far too broad and one-sided, granting Wisconsin Auto Title Loans a choice of forum-arbitration or the circuit court-for its claims, while permitting the borrower to raise claims only before an arbitrator. The doctrine of substantive unconscionability limits the extent to which a stronger party to a contract may impose arbitration on the weaker party without accepting the arbitration forum for itself. . . .

While we appreciate that a one-sided arbitration provision may not be unconscionable under the facts of all cases, we conclude that the overly one-sidedness of the arbitration provision at issue in the instant case renders the arbitration provision substantively unconscionable. Many courts have reached a similar conclusion of unconscionability when one-sided arbitration provisions require the weaker party to arbitrate.

*Wisconsin Auto Title Loans, Inc.,* 714 N.W.2d at 172–73 (footnotes and paragraph numbering omitted). The Wisconsin Supreme Court then cited numerous cases, including *Taylor v. Butler, supra,* which have held that one-sided arbitration clauses which allow the party drafting the agreement access to the judicial arena but which relegate the consumer solely to arbitration were unconscionable. *See Wisconsin Auto Title Loans, Inc.,* 714 N.W.2d at 173 n. 56.

Defendant correctly notes that several jurisdictions have reached conclusions different from the result reached by the Tennessee Supreme Court in *Taylor v. Butler.* Defendant argues that the *Taylor* decision was not sound and urges this Court to side with those jurisdictions reaching conclusions contrary to *Taylor.* Specifically, Defendant argues that "the fundamental legal soundness of *Taylor* must be seriously questioned"; that "the *Taylor* decision suffers from an obvious *practical* flaw"; that *Taylor* suffers from inherent "legal and logical weaknesses"; and finally that *Taylor* is just wrong because it failed to apply "*federal* law on the issue of arbitrability." This Court, however, is not at liberty to reverse decisions of our Supreme Court. If Defendant believes *Taylor* was wrongly decided, that argument needs to be directed to the Supreme Court.

We conclude that the arbitration clause at issue in the present case falls squarely within the reasoning of the majority opinion in *Taylor v. Butler, supra.* The arbitration clause, therefore, is unconscionable and unenforceable. Accordingly, the Trial Court erred when it granted Defendant's motion to compel arbitration.

### Conclusion

The judgment of the Trial Court is reversed and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed to the Appellee, Tennessee Title Loans, Inc.