Gary **PHILPOT**

v.

**TENNESSEE HEALTH MANAGEMENT, INC., et al.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 11, 2007 Session.

Dec. 12, 2007.

Permission to Appeal Denied by Supreme Court Feb. 17, 2009.

---

John B. Curtis, Jr., and Bruce D. Gill, Chattanooga, Tennessee, for the appellants, Tennessee Health Management, Inc., AmericanHealth Centers, Inc., Rehab America, Inc., AMPHRAM, Inc.; Rivergate Manor, Inc., d/b/a Vanco Manor Nursing Center; NHC Healthcare/Hendersonville, LLC d/b/a NHC Healthcare, Hendersonville; National Healthcare Corporation; NHC/OP, LP; and NHC/Delaware, Inc.

Lisa E. Circeo and Deborah Truby Riordan, Nashville, Tennessee, and Brian G. Brooks, Greenbrier, Arkansas, for the appellee, Gary Philpot, as Administrator of the Estate of Virginia Miller.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and DONALD P. HARRIS, SR. J., joined.

In this wrongful death action, the defendants contest the trial court's denial of their Motion to Compel Arbitration and Stay Proceedings. At issue on appeal is the validity of the arbitration agreement signed by the plaintiff on behalf of his mother, the deceased, on the day of her admission to the defendants' nursing home. The trial court denied the defendants' Motion to Compel Arbitration and Stay Proceedings finding "the agreement to arbitrate unenforceable as it is one of adhesion, oppressive, and unconscionable." We have determined that, based on the evidence in the record, the arbitration agreement is enforceable. Therefore, we reverse the decision of the trial court and remand to the trial court for the entry of an order compelling arbitration.

Prior to January 6, 2005, Virginia Miller had been a resident of Vanco Manor Nursing Center in Goodlettsville, Tennessee. She had resided at Vanco Manor since July of 2004. On January 6, 2005, following Ms. Miller's brief stay in a hospital, Ms. Miller's son, Gary Philpot (the "plaintiff"), sought to admit his mother to a different residential facility. It was on this day the plaintiff visited NHC Healthcare, Hendersonville. Acting in his legal

capacity as Ms. Miller's attorney-in-fact pursuant to a Durable Power of Attorney for Health Care and a general and durable power of attorney[1], the plaintiff executed an Admission and Financial Contract with NHC Healthcare, Hendersonville.

As part of the NHC admission contract, the plaintiff signed a document titled in large bold letters at the top of the page: "JURY TRIAL WAIVER AND DISPUTE RESOLUTION PROCEDURE." The two-page document contains four parts. The parts most relevant to this appeal pertain to the waiver of the right to a jury trial and the agreement to binding arbitration. The relevant parts read as follows:

> 2. DISPUTE RESOLUTION: In order to minimize the time and costs of resolving all disputes, BOTH PARTIES HEREBY WAIVE A JURY TRIAL FOR ALL DISPUTES AND CLAIMS BETWEEN THE PARTIES INCLUDING, BUT NOT LIMITED TO, THOSE ARISING FROM CONTRACT, TORT, OR STATUTORY LAW.[2] Both parties agree, depending on the amount in dispute, to either (a) submit the dispute to this state's Small Claims Court judicial proceeding, or (b) if the amount in dispute exceeds the Small Claims Court statutory limits, then submit the dispute to binding arbitration....
>
> 3. BINDING ARBITRATION:[3] As stated above, for administrative expedience, any claim, controversy, dispute or disagreement initiated by either party that exceeds the statutory jurisdiction of the local Small Claims Court as listed above ... shall be resolved by binding arbitration administered by a neutral, experienced and disinterested arbitrator. The party initiating arbitration shall serve upon the other party via certified mail a demand for arbitration, which should include a brief description of the party's claim(s), the relief sought, and a proposed arbitrator who must be neutral, experienced and disinterested.
>
> . . . .
>
> (c) AWARD: ... The costs of arbitration, including the administrative fee and arbitrator's compensation and expenses, shall initially be advanced by the party requesting arbitration, but shall be awarded by the arbitrator in accordance with applicable law.
>
> . . . .
>
> (e) GOVERNING LAW: This agreement for binding arbitration shall be governed by and interpreted in accordance with the laws of the state where the Center is licensed.
>
> BY AGREEING TO RESOLUTION OF ALL DISPUTES AND CLAIMS BY SMALL CLAIMS COURT JUDICIAL PROCEEDINGS OR BINDING ARBITRATION, BOTH PARTIES ARE WAIVING THEIR RIGHTS TO A JURY TRIAL. THIS WAIVER ALSO APPLIES

---

1. In 2004, Virginia Miller executed a Durable Power of Attorney for Health Care and a general and durable power of attorney. In each document she named her son, Gary Philpot, as her attorney-in-fact. In pertinent part, the Durable Power of Attorney for Health Care provided: "To ensure that decisions about my medical care are made consistent with these wishes and my personal values, I appoint [Gary Philpot] my attorney-in-fact to make health care decisions for me whenever I am unable to do so...."

2. We have not emphasized the sentence. The sentence appears in the contract documents as shown here, in bold and all capital letters.

3. We have not emphasized the phrase BINDING ARBITRATION. It appears in the document as shown here, in bold and all capital letters.

**TO ALL APPEALS FROM SMALL CLAIMS COURT JUDGMENTS.**[4]

The parties agree that this Jury Trial Waiver and Dispute Resolution Procedure shall survive and not otherwise be revoked by the death or incompetence of Patient.

. . . .

**4. REVOCATION OF ARBITRATION PROVISION:**[5] All parties acknowledge the right of each to revoke the above arbitration provision if the original below is signed during normal business office hours within ten (10) business days.

. . . .

Within the arbitration agreement, there was a separate acknowledgment concerning the jury trial waiver and dispute resolution procedure that was signed by the plaintiff as the legal representative for Ms. Miller. The acknowledgment, which was set forth in bold font in a "box," provided:

> **I hereby agree to the Jury Trial Waiver and Dispute Resolution Procedure described above and its intent to provide administrative expedience. Its provisions have been explained to me and I have been provided the opportunity to ask questions about these provisions prior to my signature below. I understand that I waive my right to trial by jury. I also acknowledge my right to revoke the agreement to arbitrate as set forth in provisions (2) and (3) above, by completing the bottom portion of this page during normal business office hours within ten (10) business days of the date below.**
>
> Date
>
> Patient's Signature: _____  _____
> Legal Representative's Signature: *Gary Philpot POA*  *1/6/05*
> Additional Signature: _____  _____

The document appears in the record as shown above with the plaintiff having signed and dated the acknowledgment: "Gary Philpot POA 1/6/05."[6]

Ms. Miller died on March 24, 2005, while a resident of the NHC Hendersonville facility. Four months later, the plaintiff commenced this action against several defendants, including NHC Healthcare/Hendersonville, LLC d/b/a NHC Healthcare, Hendersonville; National Healthcare Corporation; NHC/OP, L.P.; NHC Delaware Inc.; Tennessee Health Management, Inc.; American Health Centers, Inc.; Rehab America, Inc.; AMP-HARM, Inc.; and Rivergate Manor, Inc. d/b/a Vanco Manor Nursing Center. The plaintiff asserted numerous claims[7] against all of the defendants, including a wrongful death claim against the various NHC defendants as the owners or operators of the NHC Healthcare, Henderson-

---

**4.** We have not emphasized the paragraph. The paragraph appears in the contract documents as shown here, in bold and all capital letters.

**5.** We have not emphasized the subtitle. It appears in the document as shown here, in bold and all capital letters.

**6.** We have not emphasized the paragraph. It appears in the contract as shown, in bold letters within a box.

**7.** The plaintiff's causes of action against all of the defendants included negligence, gross negligence, willful, wanton, reckless, malicious and/or intentional conduct, medical malpractice, and violation of the Tennessee Adult Protection Act.

ville nursing home.[8]

In response to the complaint, the NHC defendants filed a Motion to Compel Arbitration and Stay Proceedings [9] in compliance with the admission contract and arbitration agreement. The plaintiff responded to the motion and argued the arbitration agreement was unenforceable for a variety of reasons. On October 21, 2005, following a hearing, the trial court ordered further discovery regarding the motion of the NHC defendants.

On June 9, 2006, following discovery and a second hearing,[10] the trial court denied the NHC defendants' Motion to Compel Arbitration. In its order, the trial court found "the agreement to arbitrate unenforceable as it is one of adhesion, oppressive, and unconscionable." The trial court further explained that "[t]he agreement in this case is oppressive and unconscionable for three reasons: lack of mutuality, the fees, and the revocation clause." This appeal followed.

## STANDARD OF REVIEW

■ The issues before us are questions of law. Therefore, we will review the issues *de novo* and reach our own independent conclusions. *Reno v. Suntrust, Inc.*, No. E2006–01641–COA–R3–CV, 2007 WL 907256, at *2 (Tenn.Ct.App. March 26, 2007) (no Tenn. R.App. P. 11 application filed). On appeal, the central issue presented is whether the trial court erred in denying the NHC defendants' motion to compel arbitration. Although an appeal as of right must originate from a trial court's final judgment, *see* Tenn. R.App. P. 3(a), this appeal is before us as of right because

under the Tennessee Uniform Arbitration Act an appeal may be taken from an order denying an application to compel arbitration. Tenn.Code Ann. § 29–5–319; *see also T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 864–65 (Tenn.Ct.App.2002).

## ANALYSIS

### FEDERAL OR STATE LAW

■ As a preliminary matter, we must first address whether this case is governed by the Federal Arbitration Act (FAA) or the Tennessee Uniform Arbitration Act (TUAA). The trial court did not determine the applicable law, but it does not appear that the trial court's decision turned on the application of the FAA or the TUAA. However, for purposes of clarity, we find it proper to note the applicable law.

The Supreme Court recently addressed this issue in *Owens v. National Health Corp.*, 263 S.W.3d 876, 882–83 (Tenn.2007). In explaining whether the FAA or the TUAA applied, the Court stated:

> We need not belabor our analysis on this point because Section H(3), the arbitration provision within the nursing-home contract, expressly provides that "this agreement for binding arbitration shall be governed by and interpreted in accordance with the laws of the state where the Center is licensed." It is undisputed that NHC Healthcare, Murfreesboro is licensed in Tennessee. Therefore, that language does not merely provide that

---

8. The NHC defendants, specifically, are NHC Healthcare/Hendersonville, LLC d/b/a NHC Healthcare, Hendersonville; National Healthcare Corporation; NHC/OP, LP; and NHC Delaware Inc.

9. The other defendants filed a similar motion, relying on the NHC arbitration agreement,

but the trial court denied that motion and no appeal was taken.

10. The parties agreed that the arbitration dispute should be resolved on the pleadings, depositions, and affidavits. Therefore, no evidentiary hearing was held.

issues of substantive law are to be determined by reference to Tennessee law; it clearly provides that the arbitration agreement itself "shall be governed by and interpreted" in accordance with the laws of Tennessee. Applying *Volt [Info. Scis., Inc. v. Bd. or Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ], we must conclude that this case is governed by the Tennessee Uniform Arbitration Act and not the Federal Arbitration Act. *Owens,* 263 S.W.3d at 883. The governing law provision of the arbitration agreement in the present case contains language identical to that cited by the court in *Owens.* Therefore, we conclude that this arbitration agreement, too, should be governed by the TUAA.

### PUBLIC POLICY CONSIDERATIONS

■ The plaintiff originally argued on appeal that we should hold, as a matter of Tennessee law, that pre-dispute arbitration agreements executed upon a resident's admission to a nursing home violate public policy and are, therefore, invalid. Fortunately, the Supreme Court has subsequently addressed this issue in *Owens,* and therefore, we need not belabor the issue. In *Owens,* the Supreme Court "reject[ed] the plaintiff's assertion that pre-dispute arbitration agreements in nursing-home contracts are per se invalid because they violate public policy." *Owens,* 263 S.W.3d at 888. Based on this holding, we reject the plaintiff's argument and reiterate that arbitration agreements such as the one in the instant case are not per se invalid.

### ENFORCEABILITY OF THIS ARBITRATION AGREEMENT

■ Because the arbitration agreement is not per se invalid as against public policy, we must next determine whether the parties' agreement is enforceable. To conduct that analysis, we must examine the agreement and determine whether it is a contract of adhesion, and if so, whether it contains such terms that render it unconscionable or oppressive. *Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn.1996). The defendants concede that the arbitration agreement is a contract of adhesion. However, it is well established that concluding a contract is a contract of adhesion is not determinative of the contract's enforceability. *Id.* To the contrary, a contract's enforceability generally "depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.* Adhesion contracts that are oppressive to the weaker party or limit the obligations and liability of the stronger party will not be enforced by the courts. *Id.* Likewise, "[a] contract may be unconscionable if the provisions are so one-sided that the contracting party is denied an opportunity for a meaningful choice." *Owens,* 263 S.W.3d at 889. (citing *Haun v. King,* 690 S.W.2d 869, 872 (Tenn. Ct.App.1984)).

■ A contract will be found to be unconscionable only when the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." *Taylor v. Butler,* 142 S.W.3d 277, 285 (Tenn.2004) (quoting *Haun,* 690 S.W.2d at 872). The unconscionability analysis can be broken down into two component parts: (1) procedural unconscionability, which is an absence of the meaningful choice on the part of one of the parties and (2) substantive unconscionability, which refers to contract terms which are unreasonably favorable to the other party. *Elliott v. Elliott,* No. 87–276–II, 1988 WL 34094, at *4 (Tenn.Ct.App. April 13, 1988).

The Tennessee Supreme Court, in *Buraczynski,* examined physician-patient arbitration agreements for enforceability and set forth the relevant factors. In that decision, the Supreme Court noted that "in the context of arbitration agreements between patients and health care providers, courts have refused to enforce an arbitration agreement which was contained within a clinic admission form and which gave the patient no option to revoke the agreement and regain the right to a jury trial." *Buraczynski,* 919 S.W.2d at 320 (citing *Obstetrics and Gynecologists William G. Wixted, M.D., Patrick M. Flanagan, M.D., William F. Robinson, M.D. Ltd. v. Pepper,* 101 Nev. 105, 693 P.2d 1259, 1260 (1985)). Further, "in general, courts are reluctant to enforce arbitration agreements between patients and health care providers when the agreements are hidden within other types of contracts and do not afford the patients an opportunity to question the terms or purpose of the agreement." *Buraczynski,* 919 S.W.2d at 321.

In determining that the arbitration agreements at issue in *Buraczynski* were enforceable, the court found the following:

The agreements were not contained within a clinic or hospital admission contract, but are separate, one page documents each entitled "Physician–Patient Arbitration Agreement." A short explanation was attached to each document which encouraged the patient to discuss questions about the agreement with [the physician]. The arbitration procedure specified by the agreements gives no unfair advantage to [the physician]. Each side chooses an arbitrator, and the two arbitrators chosen appoint the third arbitrator. . . . The patient is clearly informed by a provision in ten-point capital letter red type, directly above the signature line, that "by signing this contract you are giving up your right to a jury or court trial" on any malpractice claim. The agreements contain no bur-

ied terms. All terms are laid out clearly. . . . Patients signing these agreements did not immediately relinquish access to the courts, but could revoke the agreements for any reason within thirty days of its execution and regain that right. Finally, and perhaps most importantly, the agreements did not change the doctor's duty to use reasonable care in treating patients, nor limit liability for breach of that duty, but merely shifted the disputes to a different forum.

*Id.* Based on this analysis, the court concluded that none of these arbitration agreement provisions could be "construed as unconscionable, oppressive, or outside the reasonable expectations of the parties," and, therefore, the agreements were enforceable even though contracts of adhesion. *Id.*

In making the determination of whether the arbitration agreement in the case before us is an enforceable contract of adhesion, we "must consider all the facts and circumstances of [the] particular case." *Owens,* 263 S.W.3d at 889. Based on our examination of the arbitration agreement in the present case, we do not find the provisions or circumstances to be oppressive or unconscionable.

The plaintiff asserts multiple challenges to the enforceability of the arbitration agreement. He argues that the circumstances surrounding the signing of the arbitration agreement render it unconscionable. He contends he was presented with a complex admissions packet containing numerous documents and did not realize he was giving up the right to a jury trial. He also contends the arbitration agreement lacks mutuality, that it only requires the plaintiff to arbitrate, not the NHC defendants. Next he contends the agreement is oppressive and unconscionable due to the fact the arbitration procedure specified in the agreement would be cost prohibitive.

And finally, he contends the revocation provision in the agreement is of no consequence and, thus, does not relieve the agreement of its oppressive and unconscionable nature. We will discuss each of these matters in turn.

■ The plaintiff contends the circumstances surrounding the signing of the agreement render it unconscionable due to what he characterizes as an urgency to find a facility for his mother. As the trial court recognized in its order, the arbitration agreement was signed by the plaintiff on the day Ms. Miller was to be released from the hospital, and the record indicates the plaintiff was told that he had to decide whether to take the open spot at the NHC facility or the bed would be filled by someone else. The record, however, reflects the fact the NHC facility was not the only nursing home facility in the area, and that the plaintiff knew that there was another facility. Moreover, the record reflects the "urgency" was due in principal part to the plaintiff's desire to attend to this matter during his lunch break.[11]

The plaintiff argues that he was presented with an admissions packet containing a number of lengthy documents and the NHC staffer "quickly flipped through the pages," essentially summarized the contents, and did not explain that signing the arbitration agreement meant that the plaintiff was giving up his right to a jury trial. The affidavit of the NHC staffer, however, contradicted the plaintiff's testimony.

■ A party is presumed to know the contents of a contract he has signed. *Giles v. Allstate Ins. Co., Inc.,* 871 S.W.2d 154, 157 (Tenn.Ct.App.1993); *Reno v. Sun-Trust, Inc.,* No. E2006–01641–COA–R3CV, 2007 WL 907256, at *3 (Tenn.Ct.App.

March 26, 2007) (no Tenn. R.App. P. 11 application filed). The law imparts a duty on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril. *Id.* Nothing in the record suggests that the plaintiff's educational background or abilities prohibited him from comprehending the agreement he signed. Moreover, the plaintiff does not argue that the agreement is unclear, nor does he argue that he requested additional time to read the agreement, nor did he ask questions.

The agreement reveals that the arbitration provision and the jury trial waiver were not hidden in the contract. To the contrary, they were prominently disclosed in the contract documents in several places. On its face, the agreement states, in bold all capital letters, that the document is a jury trial waiver and dispute resolution procedure and that both parties are waiving the right to a jury trial for all disputes and claims between the parties. In addition, the relevant provisions were set apart from the rest of the admission documents and clearly labeled "Arbitration Agreement" on a separate cover sheet, followed by a two-page document clearly stating that this agreement contained a "Jury Trial Waiver." The acknowledgment and signature block was also set apart, which emphasized that by signing the agreement, the plaintiff was agreeing to the Jury Trial Waiver and Dispute Resolution Procedure, that the provisions had been explained and he had been provided the opportunity to ask questions, and that, explicitly, the plaintiff was waiving his right to trial by jury. Thus, the plaintiff was clearly informed of the terms of the agreement and the waiving of the jury trial right.

---

11. The record reflects the plaintiff went to the NHC facility during his lunch break from work and desired to complete the task of placing her in a facility other than Vanco Manor during his lunch break.

The plaintiff contends the arbitration agreement lacks mutuality, that it only requires the plaintiff to arbitrate, not the NHC defendants, which was one of the reasons stated by the trial court for finding the arbitration agreement unenforceable. We, however, are unable to reach the same conclusion as the trial court.

The arbitration agreement expressly states that *the parties* mutually waive the right to a jury trial for all disputes and claims between the parties. The agreement also provides that all disputes shall be submitted to binding arbitration with the exception of claims not exceeding the jurisdictional limit of the general sessions court.[12] Thus, the parties could file suit in general sessions court, without going to arbitration, provided the amount in controversy was within the jurisdictional limits of that court.[13]

The agreement clearly provides that the general sessions exception applies to the defendants as well as the plaintiff. Thus, the provision is mutual. This fact notwithstanding, the plaintiff contends that the practical effect of the foregoing provisions prohibits the plaintiff, but not the defendants, from seeking judicial remedies. This contention is based on the premise by the plaintiff that he would never have a claim against the defendants as small as the jurisdictional limit and that the defendants' claims against the plaintiff would always be within the general sessions jurisdiction. We, however, find no factual or legal basis for either contention. The parties mutually agreed to arbitrate all claims that exceeded the statutory limit of general sessions court, and each party has the contractual right to file suit against the other in general sessions court provided the claims at issue are within the jurisdiction of the court.

The plaintiff contends the arbitration procedure specified in the agreement would be cost prohibitive. The trial court agreed with the plaintiff on this point and made a finding to that effect. We, however, have determined that the evidence in the record is insufficient to support this finding.

When a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, the burden of showing the likelihood of incurring prohibitively expensive costs is on that party. *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 363 (Tenn.Ct. App.2001) (quoting *Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). Thus the burden was on the plaintiff to show the costs would be prohibitively expensive. The only evidence the plaintiff provided pertains to a fee schedule of the American Arbitration Association; however, the agreement does not require the services of the AAA to arbitrate the parties' disputes and the parties were free to select any arbitrator they agree upon. The agreement merely provides that the arbitrator selected by the parties shall use the procedures of the AAA as guidelines *in the event* the parties cannot agree upon the governing rules and procedures to arbitrate their dispute.[14]

---

12. At the time the parties entered into the arbitration agreement, the general sessions jurisdictional limit was $15,000; however, as of September 1, 2006, the general sessions jurisdictional limit has extended to the sum of $25,000. Tenn.Code Ann. § 16–15–501.

13. The agreement also provided that all appeals from general sessions court judgments, whether by the plaintiff or the defendants, were subject to arbitration.

14. The agreement provides that the arbitrator shall use "the American Arbitration Association's Commercial Dispute Resolution procedures and Supplementary Procedures for Consumer–Related Disputes as a guideline for conducting the arbitration...."

Moreover, the transcript reflects the acknowledgment of the trial court that the AAA "will not honor these types of pre-dispute arbitration agreements in the context of the medical services contract." [15] Accordingly, because the AAA would not agree to arbitrate a dispute among the parties, its fee schedule is not material.

■ The final issue to address is the plaintiff's challenge to the revocation provision, which affords the plaintiff the right to revoke the arbitration provisions within ten business days of signing the agreement. The trial court found the revocation procedure "problematic" and expressed concern it would lead to the discharge of the resident from the nursing facility if the right were exercised. Although revocation of the agreement by a resident following admission to a nursing facility may be problematic, as the trial court noted, our Supreme Court in *Buraczynski* considered a revocation provision indicative of the reasonableness of the agreement. After acknowledging that the agreement was offered to the patient on a "take it or leave it" basis in *Buraczynski,* and had the patient refused to sign the agreement the physician "would not have continued rendering medical care," thereby terminating the physician-patient relationship and interrupting the course of the patient's treatment, the court stated, "in the context of arbitration agreements between patients and health care providers, courts have refused to enforce an arbitration agreement which was contained within a clinic admission form and *which gave the patient no option to revoke the agreement and regain the right to a jury trial." Buraczynski,* 919 S.W.2d at 320 (citing *Pepper,* 693 P.2d at 1260) (emphasis added). The Court went on to note that:

in general, courts are reluctant to enforce arbitration agreements between patients and health care providers when the agreements are hidden within other types of contracts and do not afford the patients an opportunity to question the terms or purpose of the agreement. *This is so particularly when the agreements require the patient to choose between forever waiving the right to a trial by jury or foregoing necessary medical treatment,* and when the agreements give the health care provider an unequal advantage in the arbitration process itself.

*Id.* at 321. Following its examination of the arbitration agreements at issue in *Buraczynski,* the Court determined the agreement did not contain any oppressive provisions, and further noted the patients signing these agreements "did not immediately relinquish access to the courts, but could revoke the agreements for any reason within thirty days of its execution and regain that right." *Id.*

Back to the case at bar, had the plaintiff invoked his right to revoke the arbitration provision, he and his mother may have been presented with the adverse circumstance contemplated by the trial court. That circumstance, however, would be no more problematic than the termination of the physician-patient relationship and interruption of the course of the patient's treatment contemplated in *Buraczynski.* With the Supreme Court having found the revocation provision in the arbitration and waiver of jury trial agreement enforceable in *Buraczynski,* which is substantially similar to the agreement at issue here, we find no basis upon which to rule otherwise.

---

**15.** This was stated to the trial court in the hearing on the motion, to which the court replied, "Right."

IN CONCLUSION

Having determined the arbitration and jury trial waiver provisions of the agreement at issue are valid and enforceable, we respectfully reverse the decision of the trial court and remand with instructions to enter an order compelling arbitration pursuant to the parties' agreement. Costs of appeal are assessed against the plaintiff.