# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 5, 2007 Session

## BRIDGETT HILL, ET AL. v. NHC HEALTHCARE/NASHVILLE, LLC, ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 03C2808    Walter Kurtz, Judge

### No. M2005-01818-COA-R3-CV - Filed April 30, 2008

FRANK G. CLEMENT, JR., J., concurring.

I concur fully with the determination that the arbitration provision is unconscionable and thus unenforceable. My concurrence is based on the combined effect of the following facts, which I find dispositive of the issue of unconscionability. One, the agreement afforded the nursing home an unfair advantage in the arbitration process by requiring Ms. Hill to remit potentially exorbitant arbitration fees in advance of any proceedings she commenced. Two, Ms. Hill was under a compelling time constraint to execute the admissions agreement due to the fact she needed immediate nursing home care. Three, the agreement did not afford her the option to subsequently revoke the arbitration provision.

Although arbitration agreements between residents and nursing homes are permitted, *see Owens v. Nat'l Health Corp. et al*, No. M2005-01272-SC-R11-CV, 2007 WL 3284669, ___ S.W.3d ___ (Tenn. Nov. 8, 2007), our courts have refused to enforce arbitration provisions when the agreement requires the resident or patient to choose between a waiver of her right to go to court or foregoing health care services if the agreement affords the health care provider an unfair advantage in the arbitration process.[1] *See Buraczynski v. Eyring*, 919 S.W.2d 314, 321 (Tenn. 1996).

The NHC agreement at issue required that Ms. Hill advance the cost of all arbitration fees should she commence an arbitration proceeding to resolve essentially any dispute with NHC. The record reveals the cost to arbitrate pursuant to the protocol specified in the agreement could be as high as $18,000. Thus, Ms. Hill would have been required to advance as much as $18,000 to commence the arbitration process. If she were unable to advance the arbitration fees, she would have to abandon her legal remedies. Such an onerous requirement is shocking, especially in contrast to the minuscule sum Ms. Hill would be required to advance to commence a civil action for the same relief.

---

[1] The agreement at issue in *Buraczynski* was between a physician and patient. Like here, the agreement was presented to the patient at the time of treatment on a "take it or leave it" basis. Also as the case is here, had the patient refused to sign the agreement, the physician would not have rendered medical care.

The other significant circumstance is that the agreement was signed by Ms. Hill under compelling time constraints, and it did not afford her the right to revoke the arbitration provisions within a reasonable period of time, as is the case in many nursing home admission agreements.[2] As the Court explained in *Buraczynski*, our courts are reluctant to enforce an arbitration agreement between a patient and a health care provider if the agreement has the combined effect of requiring the patient "to choose between forever waiving the right to a trial by jury or foregoing necessary medical treatment," and it affords the health care provider "an unequal advantage in the arbitration process itself." *Buraczynski*, 919 S.W.2d at 321.

Although the revocation of such an agreement by a resident following admission to a nursing facility may be problematic, *see Philpot v. Tennessee Health Mgmt., Inc.,* No. M2006-01278-COA-R3-CV, 2007 WL 4340874, at * 8 (Tenn. Ct. App. Dec. 12, 2007) perm. app. filed (Tenn. Feb. 11, 2008), the inclusion of a reasonable revocation provision in an adhesion contract is indicative of the reasonableness of the agreement. *Buraczynski*, 919 S.W.2d at 320 (noting that the patient had not immediately relinquished access to the courts, "but could revoke the agreements for any reason within thirty days of its execution and regain that right"). This court reached the same conclusion in *Philpot*, which hinged on the validity of a nursing home admission agreement, holding the revocation provision in the arbitration and waiver of jury trial agreement enforceable based upon a substantially similar arbitration provision to that at issue in *Buraczynski*.

For the reasons stated above, I concur with the determination that the arbitration provision is unconscionable and thus unenforceable.

I, however, respectfully disagree with the emphasis placed on certain other facts. For example, I do not place any significance on the fact the nursing home did not provide "a thorough explanation" of the nuances of the arbitration provisions because no explanation was requested. Moreover, I do not place any significance on the fact the agreement "contained no explanation of binding arbitration, nor any language that would encourage the patient to ask questions about the process."

As our courts have noted in recent opinions, the nursing home had an affirmative duty to disclose the fact the agreement contained mandatory arbitration provisions. I submit NHC fulfilled that duty by emphasizing the arbitration provision prominently in bold font set out in block paragraph form[3] as follows:

---

[2]In *Philpot*, the revocation provision was available to the resident of the nursing home for a period of ten days from the signing of the agreement. *Philpot,* 2007 WL 4340874, at * 2.

[3]NHC's use of bold and enlarged font to direct the resident's attention to the fact the agreement contained an arbitration provision was done in a fashion very similar to that approved by the Supreme Court in *Owens*, 2007 WL 3284669 at *2, ___ S.W.3d ___. In *Owens* and here, the resident signed immediately below the section to expressly acknowledge that the arbitration provision was purposefully disclosed prior to the resident executing the agreement. In fact, Ms. Hill, her daughter and her son (who was her attorney-in-fact) all three signed to acknowledge the fact the arbitration provision was expressly disclosed to them.

**By agreeing to arbitration of all disputes, both parties are waiving a jury trial for all contract, tort, statutory, regulatory, and other claims.**

. . . .

**I am in total agreement with the arbitration procedures described above in Section H, including the use where applicable of the AAA Defined "Consumer-Related Disputes." The provisions of this Section II have been reviewed with me prior to my signature below.**

Ms. Hill, her son (who served as her attorney-in-fact), and her daughter all three signed immediately below the arbitration section to acknowledge they were aware that arbitration was required. Thus, there can be no dispute that they were aware the agreement contained an arbitration provision.

I also place no significance on the fact the nursing home did not provide a copy of all relevant arbitration rules and the fact it did not provide internet access so Ms. Hill, her son or daughter could study the arbitration rules and procedures incorporated in the agreement prior to signing the agreement. As with any contract, if an uninformed party chooses to enter into an agreement without sufficient knowledge of all terms and conditions of the agreement, that party is generally bound by the agreement as written, regardless of the party's level of understanding of all its provisions.

The foregoing differences notwithstanding, I fully concur with the determination that the arbitration provision is unconscionable and thus unenforceable.

_____
FRANK G. CLEMENT, JR., JUDGE