IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 22, 2009 Session

# LULA MCGREGOR, ET AL. v. CHRISTIAN CARE CENTER OF SPRINGFIELD, L.L.C.

**Appeal from the Circuit Court for Robertson County**
**No. 11946      Ross H. Hicks, Judge**

**No. M2009-01008-COA-R3-CV - Filed April 29, 2010**

Shortly after a sixty-one year old woman signed a nursing home admission agreement, she fell and broke her ankle. She sued for negligence, and the defendant nursing home moved the court to compel her to bring her claim to arbitration in accordance with a separate agreement she had signed as a part of the admissions process. The trial court found that the arbitration agreement was a contract of adhesion and that it would be unconscionable to enforce it. The nursing home filed a direct appeal to this court pursuant to Tenn. Code Ann. § 29-5-319. Because the terms of the agreement favor the nursing home by giving it a judicial forum, we find the arbitration agreement unconscionable. Therefore, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Christy Tosh Crider, John Michael Phillips, Nashville, Tennessee, for the appellant, Christian Care Center of Springfield, L.L.C.

Debra Wall, Deborah S. Evans, Clarksville, Tennessee, for the appellees, Lula McGregor and spouse, James McGregor.

## OPINION

### I. BACKGROUND

Lula McGregor, a sixty-one year old Clarksville resident, underwent extensive spinal surgery at St. Thomas Hospital in Nashville on or about December 11, 2006. She was

released from the hospital on January 5, 2007, and was transported by ambulance to the premises of defendant Christian Care Center of Springfield, a skilled nursing facility for convalescence and rehabilitation located in Robertson County. She later testified that she was in severe pain prior to getting into the ambulance and that the jolting she experienced during the ambulance ride worsened her pain.[1]

No family members were with Ms. McGregor at 1:00 p.m. when she arrived at the nursing home and was shown to her room. Fifteen minutes later she was approached by the admissions coordinator, Angela Traughber, to begin the admissions process, which Ms. Traughber explained as the two sat at a table. Ms. McGregor testified that she just wanted to lie down when she arrived at Christian Care Center and that she asked for pain medication, but that Ms. Traughber told her no medication could be administered until she completed the admissions process. Ms. Traughber testified that she did not recall Ms. McGregor telling her she was in pain.

Before signing any papers, Ms. McGregor had to watch a video entitled "Setting Realistic Expectations." Ms. McGregor was also given another video, entitled "Care Plans: the Most Important Person," but she was allowed to defer watching it until later. The rest of the admissions process took about an hour. The admissions packet included informational sheets, a sixteen page admissions agreement which she had to sign and initial in various places, as well as a number of other documents, including a six page arbitration agreement that is at the center of this appeal.

Among other things, the arbitration agreement contains the following language set out in capital letters: "THIS AGREEMENT WAIVES RESIDENT'S RIGHT TO A TRIAL IN COURT AND A TRIAL BY JURY FOR ANY FUTURE LEGAL CLAIMS RESIDENT MAY HAVE AGAINST FACILITY." Ms. McGregor and Ms. Traughber both initialed a provision in the agreement limiting to $4,800 the amount of arbitration fees, attorneys fees and out-of pocket expenses that can be awarded to the prevailing party, leaving a blank beside an alternative limitation of $3,800. Ms. McGregor also left blank a provision waiving her right to keep her health information confidential during the arbitration process, and initialed the alternative provision stated that "The Resident DOES NOT WAIVE . . ." that particular right.

---

[1]Medical records from St. Thomas show that Ms. McGregor was given a tablet of hydrocodone-acetaminophen (Lortab) for hip pain at 6:47 a.m. on the morning of January 5. She was given another Lortab for back pain at 7:55 a.m. The medication apparently did not do much to relieve her pain, for the records show that she scored her pain intensity as 10 out of 10 after each dose. She was also medicated with Valium at 8:00 a.m. Ms. McGregor was given two additional Lortabs for back pain at 11:11, just before she was placed in the ambulance.

Another section of the arbitration agreement declares that the resident has the right to revoke the agreement "by written notice delivered to facility within thirty (30) days of execution." Ms. McGregor signed the agreement on her own behalf, and Ms. Traughber signed on behalf of the facility. A witness's signature was also affixed to the bottom of the agreement. After the admissions process was completed, Ms. Traughber left the two videos, a brochure about the facility and her business card in Ms. McGregor's room, but did not leave any copies of the documents Ms. McGregor had signed.

A few hours later, Ms. McGregor fell in the bathroom. Her fall resulted in a compound fracture of her ankle and the bursting open of her surgical wound. After that unfortunate incident, Ms. Traughber stopped by Ms. McGregor's room and told her she would be bringing her copies of the admissions paperwork within the next few days.

Ms. McGregor was taken to the hospital for surgery on her ankle, and she remained hospitalized for more than thirty days. She now has rods in her ankle and she remains incapacitated despite rehabilitation. Thinking that Ms. McGregor would eventually return to the nursing home, Ms. Traughber left the admissions paperwork in her room with her other personal effects. Ms. McGregor never returned to Christian Care of Springfield. Her family members did come to the nursing home at some point to pick up her personal effects, but Ms. McGregor testified that she never received a copy of the admissions documents or of the arbitration agreement.

## II. LEGAL PROCEEDINGS

On January 4, 2008, Lula McGregor filed a medical malpractice complaint in the Robertson County Circuit Court, naming Christian Care Center of Springfield, L.L.C. as defendant. She claimed that the defendant's employees had breached their duty of care to her, thereby causing her to fall and to suffer the resulting physical injuries, as well as physical pain, mental and emotional anguish and loss of enjoyment of life. The complaint also included a claim by Ms. McGregor's husband James for loss of consortium.

On March 3, 2008, Christian Care filed a motion to compel arbitration and stay litigation on the basis of the arbitration agreement Ms. McGregor had signed during the admissions process. Ms. McGregor's response alleged that the arbitration agreement was a contract of adhesion that could not be enforced because of the circumstances under which it was executed. Among other things, she cited the lack of alternative institutions in which she could receive her needed rehabilitation under Medicaid, the pain she was suffering at the time she signed the agreement, and the defendant's failure to give her a copy of the

agreement after she was injured.

Limited discovery was conducted prior to the trial court's hearing on the motion, which took place on December 4, 2008. The affidavit and deposition of Ms. Traughber were in the case file, as was the deposition of Ms. McGregor. The trial court heard argument by counsel for both sides and then took the case under advisement.

The court announced its decision and explained its reasoning in a memorandum opinion filed on February 3, 2009. The court found that the arbitration agreement had been presented to Ms. McGregor on a "take or leave it basis," and that she had no choice but to sign it. It further found that "Defendant's failure to provide copies of the agreement containing the rescission clause makes it probable that the Plaintiff was unaware of her right to rescind. Under all these circumstances, it would be unconscionable for the court to enforce this arbitration agreement."

The order denying the defendant's motion was filed on March 20, 2009. The defendant then filed a timely notice of appeal to this court under Tenn. Code Ann. § 29-5-319, which provides that an appeal may be taken from an order denying an application to compel arbitration "in the manner and to the same extent as from orders or judgments in a civil action."

## III. THE STANDARD OF REVIEW

When ruling on the appeal of a denial of a motion to compel arbitration, we must follow the standard of review that applies to bench trials. *Spann v. American Express Travel Related Services Co.,* 224 S.W.3d 698, 706-07 (Tenn. Ct. App. 2006); *Cabany v. Mayfield Rehabilitation and Special Care Center*, M2006-00594-COA-R3-CV, 2007 WL 3445550 at *3 (Tenn. Ct. App. Nov. 15, 2007) (petition to rehear denied Nov. 27, 2007); *Hubert v. Turnberry Homes, LLC*, No. M2005-00955-COA-R3-CV, 2006 WL 2843449, at *2 (Tenn. Ct. App. Oct. 4, 2006) (no Tenn. R. App. P. 11 application filed). Under that standard, our review of the trial court's findings of fact are "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d).

If the trial court has not made a specific finding of fact on a particular matter, we review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997); *Hardcastle v. Harris,* 170 S.W.3d 67, 78-79 (Tenn. Ct. App. 2004). Questions of law are likewise reviewed *de novo* without a presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn.

-4-

1998); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993); *Hicks v. Cox,* 978 S.W.2d 544, 547 (Tenn. Ct. App. 1998). The question of whether a contract or a provision thereof is unconscionable is a question of law. *Taylor v. Butler*, 142 S.W.3d 277, 284-85 (Tenn. 2004); *Brown v. Tennessee Title Loans, Inc.,* 216 S.W.3d 780, 783 (Tenn. Ct. App. 2006). We must therefore review the trial court's order without applying a presumption of correctness.

### IV. IS THE ARBITRATION AGREEMENT A CONTRACT OF ADHESION?

A contract of adhesion has been defined as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996).

The present case does involve a standardized contract form, and there is no suggestion that Ms. McGregor had the opportunity to bargain for different terms than those contained in the documents presented to her. She was not explicitly told that signing the arbitration agreement was a mandatory requirement for admission to the nursing home, but one clause in the agreement implies that if she wished to be admitted, her freedom in the matter was limited: "If you do not believe binding arbitration is the right choice for you, we will, upon written request, reasonably assist you in finding other nursing facilities in the area or other long term care options such as home care or assisted living facilities."

The proof shows that Ms. McGregor was a Medicare and Medicaid patient with limited options. There was no nursing facility in her home town of Clarksville that would accept her insurance, and Christian Care Center was one of only two facilities in Robertson County that accepted patients in her position. The other facility, Beverly Healthcare, had declined to admit Ms. McGregor because of her weight. The proof also showed that because of her pain, Ms. McGregor wanted to get the admissions process over with so she could lie down and take some pain medication. So to all intents and purposes, her only realistic choice was to sign the document presented to her.

The nursing home argues that the arbitration agreement is not a contract of adhesion because of the provision giving Ms. McGregor the right to revoke it by giving written notice of her intention to do so within thirty days. It further asserts that Ms. Traughber did not say anything to indicate that Ms. McGregor would be discharged from the facility if she revoked the agreement and that in any case a discharge for such a reason would be unlawful.

As we noted above, Ms. McGregor had no opportunity to bargain over the terms of the

standardized form contract which was presented to her on a "take it or leave it" basis. Under the circumstances, the language about helping her find other nursing facilities in the area amounts to at best a hollow promise, and at worst to a veiled threat, which gave her little choice other than to sign the agreement or be deprived of necessary medical treatment. The Arbitration Agreement is clearly a contract of adhesion.

### V. IS THE ARBITRATION AGREEMENT UNCONSCIONABLE?

Even though we have found the arbitration agreement in question to be a contract of adhesion, that does not necessarily make it unenforceable. Contracts of adhesion have been held to be unenforceable only if they are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable. *Buraczynski v. Eyring*, 919 S.W.2d at 320; *Philpot v. Tennessee Health Management*, 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007). A contract of adhesion must therefore be closely scrutinized to determine if it imposes unconscionable or oppressive terms which prevent enforcement of the agreement. *Reagan v. Kindred Healthcare Operating, Inc.,* No. M2006-02191-COA-R3-CV, 2007 WL 4523092 (Tenn. Ct. App. Dec. 20, 2007) (Rule 11 permission to appeal denied Feb. 17, 2009) (citing *Buraczynski v. Eyring*, 919 S.W.2d at 320).

By enacting the Uniform Arbitration Act, Tenn. Code Ann. § 29-5-301 *et seq* [Acts 1983, ch. 462], the Tennessee Legislature adopted a policy favoring enforcement of agreements to arbitrate. *Buraczynski v. Eyring*, 919 S.W.2d at 317. The law favors such agreements because arbitration is presumed to allow parties to avoid "the formalities, the delay, the expense and vexation of ordinary litigation." *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d 445, 449 (Tenn. 1996).

It has been argued that as a matter of public policy, the courts should not enforce arbitration agreements between nursing homes and patients, where such agreements are entered into before an actual dispute arises. However, our Supreme Court has rejected that argument and held that such agreements are not invalid *per se* on public policy grounds. *Owens v. National Health Care Corp.,* 263 S.W.3d 876, 882-83 (Tenn. 2007). *See also Philpot v. Tennessee Health Management*, 279 S.W.3d at 579. Nonetheless,

> in general, courts are reluctant to enforce arbitration agreements between patients and health care providers when the agreements are hidden within other types of contracts and do not afford the patients an opportunity to question the terms or purpose of the agreement. This is so particularly when the agreements require the patient to choose between forever waiving the right to a trial by jury or foregoing necessary medical treatment, and when the agreements give the health care provider an unequal advantage in the arbitration process itself.

*Philpot v. Tennessee Health Management*, 279 S.W.3d at 583 (quoting *Buraczynski v. Eyring*, 919 S.W.2d at 317).

Under the Arbitration Act, "a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract. . . ." Tenn. Code Ann. § 29-5-302(a); *Buraczynski v. Eyring*, 919 S.W.2d at 317; *Howell v. NHC Healthcare-Fort Sanders, Inc.,* 109 S.W.3d 731, 733 (Tenn. Ct. App. 2003). Equitable defenses to enforcement of contracts include laches, estoppel, waiver, fraud, duress, and unconscionability. *Spann v. American Express Travel Related Services Co.*, 224 S.W.3d 698, 711 (Tenn. Ct. App. 2006).

We can analyze unconscionability in terms of two component parts. A contract is procedurally unconscionable if there is unfairness in the formation of the contract such that one party is deprived of meaningful choice. For example, a contract may be found to be procedurally unconscionable if the contract is presented to a party on a take it or leave it basis and the party is not given the opportunity to understand the agreement. A contract is substantively unconscionable if the terms of the contract are unreasonably favorable to the other party. *Philpot v. Tennessee Health Management*, 279 S.W.3d at 579. "The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect." *Taylor v. Butler*, 142 S.W.3d at 285 (citing Restatement (Second) of Contracts § 208 (1981)). Because we find the substantive issue dispositive, we need not examine the issues raised regarding the signing of the agreement.

Ms. McGregor argues on appeal, as she did at trial, that the terms of the arbitration agreement were unconscionable because they inequitably deprived her of her remedies at law, while protecting the nursing home's access to such remedies. Section Three of the Arbitration Agreement, entitled "Disputes to be Arbitrated," is a lengthy paragraph, which imposes extremely broad limitations on Ms. McGregor's access to the courts. It declares that binding arbitration is required for

> Any legal controversy, dispute, disagreement, or claim of any kind now existing or occurring in the future between the parties arising out of or in any way relating to this Arbitration Agreement or the Resident's stay at the facility, including, but not limited to, all claims based on breach of contract, negligence, medical malpractice, tort, breach of statutory duty, resident's rights, any departures from accepted standards of care, and all disputes regarding the interpretation or scope of this Arbitration Agreement . . .

Near the bottom of Section Three, a sentence is found which reads, "[n]otwithstanding

the foregoing, any legal controversy, dispute, disagreement or claim of any kind between Resident and Facility solely regarding nonpayment by Resident for payments due to Facility may be adjudicated in a court of law." Ms. McGregor contends that this portion of the agreement unfairly gives the nursing home access to a forum from which she is excluded.

The Tennessee Supreme Court was faced with a similar situation in the case of *Taylor v. Butler*, 142 S.W.3d 277(Tenn. 2004) (Holder, J., dissenting). In that case, a used car dealer sought to enforce an arbitration provision in a contract of sale that required the buyer to pursue any dispute related to the sale through arbitration, but allowed the dealer to pursue his remedies for non-payment in the courts. The Supreme Court held the arbitration provision was oppressive because it was unreasonably favorable to the dealer. "Courts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party." *Taylor v. Butler*, 142 S.W.3d at 286.

The *Taylor* court determined that under the arbitration agreement in that case, the car dealer had a judicial forum for practically all claims that it could have against the customer. "Indeed, it is hard to imagine what other claims it would have against her other than one to recover the vehicle or collect a debt. At the same time, [the customer] is required to arbitrate any claim that she might have against City Auto." *Taylor v. Butler*, 142 S.W.3d at 285. The Court further stated,

> Looking at the arbitration agreement in the present case, it is clear that it is unreasonably favorable to City Auto and oppressive to Taylor. For these reasons, we find the arbitration clause in the Buyers Order to be invalid and unenforceable.

*Taylor v. Butler*, 142 S.W.3d at 285-87 (footnote in the original).

This court has applied the *Taylor* holding to an agreement similar to that in the case before us. *Brown v. Tennessee Title Loans, Inc.,* 216 S.W.3d 780, 783 (Tenn. Ct. App. 2006).

The nursing home argues that the case of *Philpot v. Tennessee Health Management*, 279 S.W.3d 573, is more closely analogous to the one before us, and that we should follow its logic rather than the logic of *Taylor v. Butler*, *supra*. Like the present case, *Philpot* involved a dispute between a nursing home and one of its residents. The arbitration agreement in *Philpot* stated that the parties mutually waive the right to a jury trial for all disputes and claims between them. It also stated that all disputes would be submitted to binding arbitration with the exception of claims not exceeding the jurisdictional limits of the

general sessions court.[2]

The plaintiff argued that there was a lack of mutuality in the agreement. He contended that the defendant nursing home was the only party whose claims were likely to fall within the jurisdictional limits of the general sessions court, while his claims against the defendant would never be as small as the jurisdictional limit. However, this court found no factual basis in the record for the plaintiff's contentions. We accordingly ruled that the arbitration agreement applied equally to both parties and thus that it was not unconscionable, and could be enforced.

The arbitration agreement in the present case did not explicitly state that the parties mutually waived their right to a jury trial, but only that the resident was waiving her right. We can, however, infer from the breadth of the language in Section Three that both parties were required to submit almost all their disputes to arbitration, and thus that the nursing home was also surrendering its right to a jury trial under most circumstances. But the nursing home is the sole beneficiary of the one explicit exception to the waiver, which allows it to pursue its remedy for non-payment in a court of law rather than through arbitration. Thus, as in *Taylor v. Butler*, the arbitration agreement limits the obligations of the stronger party. It forces Ms. McGregor to go to arbitration for any claims she may have against the nursing home, but it gives the nursing home recourse to the courts for certain claims against her. It is therefore substantively unconscionable, and it may not be enforced.

**VI.**

The order of the trial court is affirmed. We remand this case to the Circuit Court of Robertson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Christian Care Center of Springfield, L.L.C.

_____
PATRICIA J. COTTRELL, JUDGE

---

[2]The general sessions jurisdictional limit is $25,000. See Tenn. Code Ann. § 16-15-501(d)(1) [Acts 2006, ch. 722 § 1].