IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 25, 2012 Session

# THE STATE OF TENNESSEE IN ITS OWN BEHALF AND FOR THE USE AND BENEFIT OF THE GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY v. DELINQUENT TAXPAYERS AS SHOWN ON THE 2006 REAL PROPERTY TAX RECORDS OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

**Appeal from the Chancery Court for Davidson County**
**No. 085721     Claudia Bonnyman, Chancellor**

---

**No. M2011-00308-COA-R3-CV - Filed December 18, 2012**

---

Purchaser of condominium at delinquent tax sale sought excess funds remaining after taxes and court costs had been paid.  Purchaser prepared a Quitclaim Deed that transferred Taxpayer's title and redemption rights in property to Purchaser.  Purchaser next prepared a Deed of Correction that corrected the spelling of Taxpayer's name, but that also included a clause purporting to transfer to Purchaser Taxpayer's right to the excess funds.  Purchaser then prepared an Assignment of Excess Funds Payout that also purported to transfer Taxpayer's right to the excess funds to Purchaser.  Trial court awarded excess funds to Taxpayer rather than to Purchaser after finding there was no meeting of the minds and that Purchaser failed to carry his burden of proving he provided consideration for Taxpayer's conveyance of the excess funds to him.  Purchaser appealed and we affirm the trial court's judgment.  We conclude there was no consideration for the Assignment of Excess Funds Payout and that the Deed of Correction is unenforceable because it is beyond the expectations of an ordinary person for a document titled Deed of Correction to transfer a right to receive $14,000 of excess funds to a purchaser of property.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Robert John Notestine, III, Nashville, Tennessee, for the appellant, David Edwin Knestrick.

Jackson Leroy Hill, Jr., Nashville, Tennessee, Pro Se.

# MEMORANDUM OPINION[1]

## I. BACKGROUND

This case centers around the right to excess funds left over from a tax sale of real property after the delinquent taxes owing on the property have been paid. Jackson LeRoy Hill, Jr. (the "Taxpayer") owned a condominium in Nashville that was sold at a tax sale in November 2008 for $17,500. Pete Knestrick purchased the property through his trustee, Charles Burridge (the "Purchaser"). The purchase price was deposited with the Clerk and Master of the Chancery Court in Davidson County. After the taxes and court costs were paid, there remained an excess of funds in the amount of $14,713.66 (the "Excess Funds").

The Purchaser prepared a Quitclaim Deed in February 2009 for the Taxpayer to sign, which he did, that transferred to the Purchaser the Taxpayer's interest in the condominium, including his redemption rights. The Purchaser then filed a motion with the trial court seeking the Excess Funds. The trial court denied this motion and invited the Purchaser to file another motion explaining why the Excess Funds should be paid to the Purchaser rather than the Taxpayer.

Following the trial court's denial of the Purchaser's motion, the Purchaser prepared a document entitled Deed of Correction. The Deed of Correction contained a clause that stated:

> WHEREAS, said Deed was not correct because a provision was erroneously omitted and the Grantor's name was incorrectly spelled . . . .

The Deed of Correction corrected the spelling of the Taxpayer's name. In addition, the Deed of Correction included the following clause, which was not in the Quitclaim Deed:

> Further the [Taxpayer] assigns to the [Purchaser] any interest he may have in any proceeds resulting from the sale of this property either by private sale or government sale or judicial sale.

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

The Taxpayer signed the Deed of Correction, as requested. The Purchaser also prepared a document entitled Assignment of Excess Funds Payout that he presented to the Taxpayer, which the Taxpayer also signed. The Assignment of Excess Funds Payout contained the following provisions:

> WHEREAS, funds generated from said tax sale resulted in excess funds of $14,713.06 being due and payable to the Taxpayer; and
>
> WHEREAS, the Taxpayer did not receive notice from the Clerk and Master concerning these excess funds and only learned of them through counsel for the person who purchased my interest in the property from me, Charles Burridge, Trustee.
>
> NOW, THEREFORE, in consideration of the premises, the undersigned Jackson LeRoy Hill, Jr. the Assignor, does by these presents transfer to Charles Burridge, Trustee, the Assignee, all of my right, title and interest in said excess funds held by the Clerk and Master and said Assignee shall have all right to collect such excess funds from the Clerk and Master and keep these funds for his own use and purpose.

Relying on the Deed of Correction and the Assignment of Excess Funds Payout, the Purchaser filed a second motion in May 2010 asking the court to pay over to him the Excess Funds. In response to the Purchaser's second motion, the court issued an Order of Reference to Special Master. The Special Master was directed to interview the Taxpayer to determine whether he was aware of his entitlement to the Excess Funds, whether he intended to give the Purchaser the Excess Funds, and if so, why. The Special Master filed a report after meeting with the Taxpayer. The Special Master reported that the Taxpayer was not aware he was entitled to the Excess Funds until after he received the Order of Reference from the court and that he did not intend to give the Excess Funds to the Purchaser. The day after the Special Master filed his report, the Taxpayer sent a letter to the Clerk and Master asking that the Excess Funds be paid over to him.

The trial court held an evidentiary hearing on December 15, 2010, to determine how the Excess Funds should be distributed. The parties each testified at the hearing and presented contradictory testimony regarding the consideration the Purchaser gave the Taxpayer in exchange for signing the documents transferring the Taxpayer's rights in the property at issue.[2] The parties agree that in exchange for the Quitclaim Deed, which

---

[2]The record on appeal does not contain a transcript of the hearing. We rely, therefore, on the trial
(continued...)

transferred the Taxpayer's title and redemption rights in the property to the Purchaser, the Purchaser gave the Taxpayer $3,000 cash and the right to continue living in the condominium for five months.

The parties disagreed, however, about additional consideration the Purchaser gave the Taxpayer for executing the two additional documents. As the trial court stated in its Memorandum and Order, the Purchaser testified that he paid the Taxpayer an additional $500 in cash to sign the Deed of Correction and another $50 in cash to sign the Assignment of Excess Funds Payout. The trial court found, however, that the Purchaser did not carry his burden to show he paid the Taxpayer any money to convey the excess funds to the Purchaser:

> The Taxpayer accepted $50 in cash to sign documents to correct the quitclaim deed, but he was not paid an additional $500. The Taxpayer was a credible witness.

The court awarded the Excess Funds to the Taxpayer. The court found the Taxpayer did not understand he had the right to the Excess Funds when he signed the Deed of Correction and the Assignment of Excess Funds Payout and that the Purchaser did not carry his burden to show he provided consideration for the Taxpayer's conveyance of these funds. The court concluded there was a lack of both consideration and a meeting of the minds with respect to the Taxpayer's conveyance of his rights to the Excess Funds to the Purchaser, and that the Purchaser therefore failed to prove there was a contract between the parties.

## II. ANALYSIS

On appeal, the Purchaser argues the trial court erred in awarding the Excess Funds to the Taxpayer because the evidence showed (1) he paid a valuable consideration for the assignment of the Excess Funds and (2) the Taxpayer "quitclaimed and assigned" the right to these funds to the Purchaser when he signed the Deed of Correction and the Assignment of Excess Funds Payout.

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854

---

[2](...continued)
court's findings of fact as set forth in its Memorandum and Order.

S.W.2d 87, 91 (Tenn. 1993).

It is a basic principle of law that all contracts must be supported by "adequate consideration." *Bratton v. Bratton*, 136 S.W.3d 595, 600 (Tenn. 2004). Consideration can take the form of either a benefit to the promisor or a detriment to, or an obligation upon, the promisee. *Id.*; *see Brown Oil Co. v. Johnson*, 689 S.W.2d 149, 151 (Tenn. 1985) (adequate consideration means the promisee does something it is under no legal obligation to do or refrains from doing something it has a legal right to do).

The evidence does not preponderate against the trial court's finding that the Assignment of Excess Funds Payout was not supported by consideration. The Assignment does not recite that any consideration was given in exchange for the Taxpayer's transfer of his rights to the Excess Funds, and the trial court found the Taxpayer did not receive anything of value in exchange for his execution of that document.[3] We therefore conclude the Assignment of Excess Funds Payout is not enforceable as a contract and the Purchaser does not have rights to the Excess Funds by virtue of that document.

Turning now to the Correction of Deed, the evidence showed the Purchaser paid the Taxpayer $50 in exchange for his signature on that document. The Tennessee Supreme Court has stated that "Enforceability [of a contract] generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996); *see Philpot v. Tennessee Health Mgmt.*, 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007) (same). Having already signed the Quitclaim Deed the Purchaser presented to him in February 2009, and then being asked a few months later to sign what he believed to be a related document entitled Deed of Correction, the Taxpayer would have had no reason to believe the Deed of Correction had any purpose other than to correct the spelling of his name or included any clause that related to anything more than the Quitclaim Deed did. Indeed, the proof in this case showed that the Taxpayer was not aware he had any rights to any Excess Funds before

---

[3]The Purchaser prepared a Statement of the Evidence in which he wrote: "[The Taxpayer] stated that the only other time he received cash was Fifty Dollars ($50.00) from Mr. Knestrick at the time he executed the assignment." This statement is in direct contradiction to the trial court's express finding of fact that the Taxpayer did not receive any payment or other consideration for conveying the Excess Funds to the Purchaser. The Taxpayer, who was not represented by counsel, did not respond to the Purchaser's Statement of Evidence, and the trial court did not expressly adopt the Purchaser's Statement of Evidence. Based on the unique facts of this case, we rely on the trial court's finding of fact rather than on the Purchaser's statement on this issue. *See Reed's Track Hoe & Dozier Serv. v. Dwyer*, 2012 WL 6094127, at *4 (Tenn. Ct. App. Dec. 7, 2012) (where trial court has not taken action with respect to proposed statement of the evidence, Court of Appeals should not rely on statement blindly where review of record shows inconsistency between statement and evidence at trial).

the trial court appointed a Special Master to interview the Taxpayer, which appointment took place after the Taxpayer signed the Correction of Deed.

Based on the facts of this case and on the applicable law, we find it is beyond the reasonable expectation of an ordinary person for a document called "Correction of Deed" to contain a provision assigning a right to receive over $14,000, and therefore decline to enforce the Correction of Deed. Accordingly, we affirm the trial court's judgment awarding the Excess Funds to the Taxpayer.

## III. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment awarding the Excess Funds to the Taxpayer. Costs of appeal are assessed against the appellant, Pete Knestrick, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE